**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| **THE CINCINNATI INSURANCE COMPANY,** | § § § § | |
| *Plaintiff,* | § § | |
| | § | **CASE NO.** 1:21-cv-298 |
| | § | |
| **v.** | § | |
| | § | **JUDGE:** |
| **ELECTRIC RELIABILITY COUNCIL OF TEXAS, INC., MARK CARPENTER, LORI COBOS, KEITH EMERY, NICK FEHRENBACH, KEVIN GRESHAM, SAM HARPER, CLIFTON KARNEL, BILL MAGNESS, JACQUELINE SARGENT, DeANN WALKER, Members of the Board of Directors, BILL MAGNESS, Chief Executive Officer, JEYANT TAMBY, Senior Vice President and Chief Administrative Officer, and WOODY RICKERSON, Vice President, Grid Planning and Operations, in their official capacities as Directors and Officers of ELECTRIC RELIABILITY COUNCIL OF TEXAS, INC.** | § § § § § § § § § § § § § § § § § § § § | |
| *Defendants.* | § | |

## COMPLAINT FOR DECLARATORY JUDGMENT

COMES NOW The Cincinnati Insurance Company ("Cincinnati"), seeking Declaratory Judgment and other relief under 28 U.S.C. §§ 2201 and 2202 and Rule 57 of the Federal Rules of Civil Procedure, and in support of its Complaint, Cincinnati respectfully states as follows:

## NATURE OF THE ACTION

1.      Cincinnati asks the Court to issue a judgment pursuant to 28 U.S.C. § 2201, declaring that the policy of insurance issued by Cincinnati to Electric Reliability Council of Texas, Inc. ("ERCOT"), does not require Cincinnati to defend or indemnify ERCOT in connection with certain underlying matters, including 19 separate lawsuits against ERCOT. These suits seek damages arising out of the mid-February 2021 *Winter Storm Uri* and the related power outages that occurred across the state of Texas. This declaratory judgment is requested in order to determine an actual controversy between the parties regarding insurance coverage for ERCOT in relation to the underlying matters.

## PARTIES

2.      Cincinnati is an Ohio corporation with its principal place of business in Fairfield, Ohio. Cincinnati has never been a citizen of the State of Texas, is still not a citizen of the State of Texas, and is currently a citizen of the State of Ohio.

3.      ERCOT is a Texas nonprofit corporation with its principal place of business in Austin, Texas, and is a citizen of the State of Texas. The registered agent for ERCOT is Bill Magness, 7620 Metro Center Drive, Austin, TX 78744, who is also a citizen of the State of Texas.

4.      Mark Carpenter, Lori Cobos, Keith Emery, Nick Fehrenbach, Kevin Gresham, Sam Harper, Clifton Karnel, Jacqueline Sargent, DeAnn Walker, and Bill Magness are members of the Board of Directors of ERCOT. Defendants Mark Carpenter, Lori Cobos, Keith Emery, Nick Fehrenbach, Kevin Gresham, Sam Harper, Clifton Karnel, Jacqueline Sargent, DeAnn Walker, and Bill Magness may be served with process at ERCOT'S principal place of business, 7620 Metro Center Drive, Austin, TX 78744. All members of the Board of Directors identified above are citizens of the State of Texas.

5.      Defendant Bill Magness is Chief Executive Officer of ERCOT. Defendant Magness is sued in his official capacity. Defendant Magness may be served with process at ERCOT's principal place of business, 7620 Metro Center Drive, Austin, Texas 78744. Bill Magness is a citizen of the State of Texas.

6.      Defendant Jeyant Tamby is Senior Vice President and Chief Administrative Officer of ERCOT. Defendant Tamby is sued in his official capacity. Defendant Tamby may be served with process at ERCOT's principal place of business, 7620 Metro Center Drive, Austin, Texas 78744. Jeyant Tamby is a citizen of the State of Texas.

7.      Defendant Woody Rickerson is Vice President, Grid Planning and Operations. Defendant Rickerson is sued in his official capacity. Defendant Rickerson may be served with process at ERCOT's principal place of business, 7620 Metro Center Drive, Austin, Texas 78744. Woody Rickerson is a citizen of the State of Texas.

## JURISDICTION

8.      This Court has subject matter jurisdiction under 28 U.S.C. § 1332 because the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000), exclusive of costs, interest, and attorney's fees, and there exists complete diversity of citizenship.

## VENUE

9.      Venue is proper in the Western District of Texas under 28 U.S.C. § 1391(b) because ERCOT has its principal place of business in Austin, Texas, and the events giving rise to this lawsuit occurred in this district.

## FACTUAL BACKGROUND

### A. The Policy

10.     Cincinnati issued policy number ENP 017 12 52 to ERCOT (the "Policy"). The Policy includes Commercial General Liability ("CGL") Coverage. The Policy was effective from June 1, 2019 to June 1, 2022.

11.     The Policy was issued and delivered to ERCOT through ERCOT's insurance agency, Marsh Wortham, a division of Marsh USA, Inc. ("Marsh"). Marsh is located in Austin, Texas.

12.     The Policy's Insuring Agreement for Coverage A, which applies to Bodily Injury or Property Damage, provides:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:
>
> **(1)** The amount we will pay for damages is limited as described in **SECTION III - LIMITS OF INSURANCE;** and
> **(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under **SECTION I - COVERAGES, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY; SECTION I -COVERAGES, COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY;** or medical expenses under **SECTION I - COVERAGES, COVERAGE C.**
> **MEDICAL PAYMENTS.** No other obligation or liability to pay sums or perform acts or services is covered unless expressly provided for under **SUPPLEMENTARY PAYMENTS - COVERAGES A AND B.**

13.     Occurrence" is defined by the Policy to mean: "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

14.    "Property damage" is defined by the Policy to mean:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it. For the purposes of this insurance, "electronic data" is not tangible property.

15.    "Bodily injury" is defined by the policy to mean: "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time."

16.    The Policy defines "Suit" as follows:

"Suit" means a civil proceeding in which money damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:
**a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent;
**b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent; or
**c.** An appeal of a civil proceeding.

17.    The Policy contains the following exclusions applicable to Coverage A, the coverage for Bodily Injury or Property Damage:

This insurance does not apply to:

**a. Expected or Intended Injury**
"Bodily injury" or "property damage" which results from the intentional or criminal acts of the insured or which is in fact expected or intended by the insured, even if the injury or damage is of a different degree or type than actually expected or intended. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b. Contractual Liability**
"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(**1**) That the insured would have in the absence of the contract or agreement; or

(**2**) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. When a claim for such "bodily injury" or "property damage" is made, we will defend that claim provided the insured has assumed the obligation to defend such claim in the "insured contract". Such defense payments will not reduce the limits of insurance.

18.     The following two exclusions are endorsed onto the policy:

**EXCLUSION – TESTING OR CONSULTING ERRORS AND OMISSIONS (CG 22 33 04 13)**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph **2. Exclusions** of **Section I - Coverage A – Bodily Injury And Property Damage Liability** and Paragraph **2. Exclusions** of **Section I – Coverage B - Personal And Advertising Injury Liability:**

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of:
  1.  An error, omission, defect or deficiency in:
  a.  Any test performed; or
  b.  An evaluation, a consultation or advice given;

        by or on behalf of any insured;

  2.  The reporting of or reliance upon any such test, evaluation, consultation or advice; or
  3.  An error, omission, defect or deficiency in experimental data or the insured's interpretation of that data.

                    *    *    *

**EXCLUSION - FAILURE TO SUPPLY (CG 22 50 04 13)**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

This insurance does not apply to "bodily injury" or "property damage" arising out of the failure of any insured to adequately supply gas, oil, water, electricity, steam or biofuel.

This exclusion does not apply if the failure to supply results from the sudden and accidental injury to tangible property owned or used by any insured to procure, produce, process or transmit the gas, oil, water, electricity, steam or biofuel.

*   *   *

**B.  Winter Storm Uri**

19.     The February 13–17, 2021 North American winter storm, unofficially referred to as *Winter Storm Uri*, was a major cold weather, ice storm. It had widespread impacts across the United States, with the worst of the storm's effects being in Texas.  The storm's effects began as early as February 5, 2021.

20.     On February 14–15, 2021, *Winter Storm Uri* brought snow, ice, and freezing temperatures across Texas. As a result, power equipment—unable to sustain the higher-than-normal energy and heating demand from residential and business customers—failed across Texas. At the peak of the outages, at least 4.5 million Texas residents were left without electricity. ERCOT ordered rolling blackouts in an attempt to manage the power grid and prevent widespread, long-duration blackouts.

21.     ERCOT supplies, evaluates, consults, advises and provides testing regarding the flow of electric power to more than 26 million Texas customers -- representing about 90 percent of the state's electric load. As the independent system manager for the region, and based on its evaluations, consultation, advice and testing, ERCOT schedules power on an electric grid that connects more than 46,500 miles of transmission lines and 680+ generation units.

22.     ERCOT describes itself as an "air traffic controller" in everyday parlance.  Just as the air traffic control tower evaluates which planes are approved to land on a particular runway at

a particular time, ERCOT evaluates where to send electrical power and in what amounts to achieve adequate service and supply of real-time demands for electricity.

### C. The Underlying Claims and Suits

23.     On or about March 4, 2021, Marsh began notifying Cincinnati of 19 underlying lawsuits ("the Underlying Lawsuits") against ERCOT and two non-suit, underlying matters (the Underlying Lawsuits and the two non-suit underlying matters are collectively "the Underlying Matters."). The two underlying matters that are not suits are requests to preserve documents and information and to produce documents or information. Marsh sought insurance coverage on ERCOT's behalf for the Underlying Matters. The Underlying Lawsuits include claims for negligence, negligence per se, gross negligence, and claims under the Texas Deceptive Trade Practices Act. All of the Underlying Matters arise out of power outages due to *Winter Storm Uri*.

24.     On or about March 4, 2021, Cincinnati was advised that ERCOT retained Elliot Clark of Winstead P.C. to represent ERCOT in litigation matters related to the February 2021 Extreme Cold Event.

25.     On March 18, 2021, Cincinnati sent ERCOT a preliminary Reservation of Rights letter. The Reservation of Rights letter included requests for information made to facilitate Cincinnati's coverage investigation.

26.     Cincinnati did not receive a response to the Reservation of Rights letter's information requests as of the date of this Complaint.

27.     Cincinnati issued a coverage position letter based on the allegations and statements in the Underlying Matters and known information regarding them (the "Coverage Position Letter"). For the reasons described in the Coverage Position Letter and as further set forth in this

Complaint, the Policy does not provide a duty to defend or indemnify the Underlying Matters, including the Underlying Lawsuits.

28.    The Underlying Matters include the following allegations:

29.    ***Guillermo Alonso, Cynthia Alonso et al. v. ERCOT et al.***; **Cause No. 2021CVH00413D1; in the 49th Judicial District Court of Webb County, Texas**:

- ERCOT could have increased electric production capacity in Texas in the days and weeks leading up to the February 2021 cold weather event, but consciously chose not to do so;
- ERCOT owed a duty to Plaintiffs and failed to take reasonable care in estimating and planning the amount of power that would be required in the Winter 2021 season;
- ERCOT owed a duty to Plaintiffs and failed to take reasonable corrective actions when it became clear that its own projections showed insufficient supply capacity to meet forecast demand;
- ERCOT persisted in performing the complained of acts and omissions with a conscious indifference to and reckless disregard to the rights, safety, or welfare of the Plaintiffs;
- ERCOT knew or should have known that this shortage of electricity would leave millions without power during extreme cold weather and that said conditions posed a risk to Texans' health, life, and property. ERCOT negligently and intentionally failure to inform Plaintiffs of the foreseeable risks thereby proximately causing Plaintiffs' damages;
- ERCOT's negligent and intentional failure to supply power to Plaintiffs was the proximate cause of Plaintiff's injuries and damages; and
- ERCOT's conduct was intentional and knowing.

30.    ***Kim Archer, Ind. a/n/f of Kathlyn U. Giles v. ERCOT et al.***; **Cause No. CC-21-00678-E; in the Dallas County Court at Law No. 5; Dallas County, Texas**:

- ERCOT performed improper estimates of power needs;
- Plaintiff asserts claims for negligence and gross negligence against ERCOT, alleging specifically: ERCOT was the manager of the stream of electricity to more than 26 million electric customers in Texas; it knew or should have known of the unreasonably dangerous condition created by the lack of preparedness and readiness to confront the winter storm; and it neither corrected the danger, nor warned Plaintiff and others of the unreasonably dangerous circumstances, which were foreseeable prior to the events complained of;
- ERCOT created, caused, and/or allowed an unreasonably dangerous condition to exist that exposed Plaintiff and others to needless danger;

- ERCOT failed to properly manage the electricity stream to Texas customers;
- ERCOT's conduct involved an extreme degree of risk, considering the probability and magnitude of harm to others; and ERCOT knew of the extreme risk, but nevertheless proceeded with conscious indifferences to the rights, safety, and welfare of others, including Plaintiff and her mother; and
- Plaintiffs complain of mental distress.

31.     ***Dimitri Beck v. ERCOT et al.*; Cause No. 2021-13927; in the 215th Judicial**

**District Court of Harris County, Texas**:

- ERCOT's role was to manage the grid, schedule power generation and availability, assess the state's needs and forecast power requirements;
- Plaintiff specifically alleges that ERCOT failed to prepare for the electric needs of the State of Texas during Winter Storm Uri;
- ERCOT failed to adequately assess the electric needs of the State of Texas during Winter Storm Uri; and
- ERCOT's acts and/or omissions rose to the level of gross negligence and warrant the imposition of exemplary damages. ERCOT was well aware of the risk of harm to Plaintiff yet exhibited conscious indifferences to the rights of Plaintiff, which proximately caused the injuries complained of.

32.     ***Brandon and Erin Boucher v. ERCOT et al.*; Cause No. 2021-11920; in the 125th**

**Judicial District Court of Harris County, Texas**:

- ERCOT failed to adequately assess the electricity needs of Texas's residents. ERCOT's forecast for the maximum electricity that would be consumed far under-estimated the reality;
- ERCOT was negligent and grossly negligent for: failing to adequately assess the electric needs of the State of Texas during Winter Storm URI, and the Defendants were well aware of the risk of harm to Plaintiffs yet exhibited conscious indifferences to the rights of Plaintiffs which proximately caused the injuries complained of;
- Plaintiffs complain of PTSD, flashbacks, panic attacks, anxiety and depression;
- ERCOT failed to adequately assess Texan's electricity needs; and
- ERCOT failed in its role as a coordinating and advisory company.

33.     ***P.L. Farley and Grover Silas v. ERCOT et al.*; Cause No. 2021-11451; in the 80th**

**Judicial District Court, Harris County, Texas**:

- ERCOT controlled the state's power load;

- ERCOT studied potential risks related to the state's power needs and forecast those needs for winter 2021;
- Prior to the winter season, ERCOT issued a report making an assessment of resource adequacy for the state;
- ERCOT failed to adequately forecast the state's winter 2021 power needs;
- ERCOT employed a meteorologist who made weather predictions retarding the winter storm;
- Although Uri was an extreme weather event, it was hardly unprecedented and unforeseeable; and
- The decision to implement days-long—rather than rolling—outages is a consequence of ERCOT's failure to prepare for winter storm Uri.

34.     *Sharon Howeth, Ind. and as Personal Representative of the Estate of Charles Howeth v. ERCOT et al.; Cause No. 2021-11543; in the 129th Judicial District Court of Harris County, Texas*:

- ERCOT was negligent for failing to adequately assess the electric needs of the State of Texas during Winter Storm Uri;
- ERCOT's acts and/or omissions rose to the level of gross negligence and warrant the imposition of exemplary damages. ERCOT was well aware of the risk of harm to Plaintiff and Defendant yet exhibited conscious indifferences to the rights of Plaintiff and Decedent, which proximately caused the injuries, death, and damages complained of; and
- ERCOT manages the power grid, schedules power delivery, assesses power needs, forecasts power needs, coordinates and advises about power issues, prepares the state for power during storms, facilitates the delivery of power, and failed in all of these functions.

35.     *Dolores Jackson, Ind. and on behalf of the estate of Elizabeth Jackson v. ERCOT; Cause No. 2021-12268; in the 61st Judicial District Court of Harris County, Texas*:

- ERCOT failed in its duty to prepare for severe weather;
- ERCOT prepared a pre-winter report, study, forecast and plan for handling severe winter weather;
- ERCOT failed in its duty to be sure that the power grid was stable and viable;
- ERCOT improperly made projections and estimates;
- Despite knowing the severe storm was approaching Texas, ERCOT failed to take the necessary steps to ensure that the electric grid would remain stable and viable.  As the cold weather event developed, the energy demand peaked at or around 69,000 megawatts.  Per ERCOT's own documents, as recently as 2018, ERCOT had experienced a winter demand of 65,915

megawatts and projected that for the 2020-21 winter nearly "83,000 MW of resource capacity is expected to be available for the winter peak;"

- ERCOT was aware or should have been aware of the increased risk Winter Storm Uri would bring to the electric grid.  Instead of increasing or ensuring the stability of the supply of power, ERCOT consciously failed to take proper action to prepare for such a storm;
- Because of the conscious decisions by ERCOT to not prepare for a cold weather event, rolling blackouts were initiated across Texas.  Tellingly, Texas has experienced multiple cold weather events like Winter Storm Uri and this scenario was predicted and warned about multiple times;
- 1989 and 2011 cold weather events were just like that in 2021;
- ERCOT's failures led to the power failure events of February 2021 and ERCOT cannot claim such an event was unforeseeable;
- ERCOT failed to take reasonable care in planning, estimating, and projecting the amount of power that would be required for the 2021 Winter season;
- ERCOT failed to take reasonable actions when it knew that its own projections and estimates indicated that supply of power would be unable to meet the forecasted demand; and
- Despite knowing of this extreme risk of harm, ERCOT persisted in the acts and omissions with a conscious indifference to and reckless disregard to the rights, safety, or welfare of others.

36. *Ambrea Jones et al. v. ERCOT et al.*; Cause No. 2021-10369; in the 157th

**Judicial District Court of Harris County, Texas**:

- ERCOT's role is alleged to be to manage, schedule, assess and forecast power needs in the state;
- Plaintiffs allege claims for negligence and gross negligence against ERCOT.  ERCOT failed to adequately asses the electricity needs of Texas's residents;
- ERCOT's forecast for the maximum electricity that would be consumed far under-estimated the reality;
- ERCOT was well aware of the risk of harm to Plaintiffs yet exhibited conscious indifference to the rights of Plaintiffs, which proximately caused the injuries complained of;
- ERCOT failed to supply power to the plaintiffs; and
- Plaintiffs allege that they suffered anxiety and worry.

37. *Brenda Johnson v. ERCOT et al.*; Cause No. 2021-10792; in the 281st Judicial

**District Court of Harris County, Texas**:

- ERCOT's role is to manage the Texas power grid, schedule power, assess power needs and forecast power needs and use;

- Plaintiff asserts claims for negligence and gross negligence against ERCOT, alleging specifically: ERCOT failed to prepare for the electric needs of the state of Texas during Winter Storm Uri;
- ERCOT allegedly failed to adequately assess the electric needs of the State of Texas during Winter Storm Uri; and
- ERCOT's acts and/or omissions rose to the level of gross negligence and warrant the imposition of exemplary damages. ERCOT was well aware of the risk of harm to Plaintiff yet exhibited conscious indifference to the rights of Plaintiffs which proximately caused the injuries complained of herein.

38. *Grace Ybarra Landa, a/n/k of Gilbert Rivera v. ERCOT*; Cause No. 2021-10554;

**in the 165th Judicial District Court of Harris County, Texas**:

- ERCOT failed to anticipate the state's energy needs;
- ERCOT developed an estimate, projections and plan for the state's energy needs in the event of a winter storm;
- Texas suffered prior storms that demonstrated weaknesses in the state's power grid in such circumstances. Reports were prepared after those storms stating needed efforts to avoid a recurrence of power blackouts. ERCOT's failure to apply the lessons of those earlier storms was a matter of conscious indifference;
- Plaintiff asserts claims for negligence, negligence per se, and gross negligence against ERCOT;
- ERCOT could have increased electric production capacity in Texas in the days and weeks leading up to the February 2021 cold weather event, but consciously chose not to do so;
- Similar cold weather events in 1989 and 2011 led to exactly the same type of rolling blackouts that have affected and continue to affect Texas residents and businesses;
- This cold weather event and its effects on the Texas energy grid were neither unprecedented, nor unexpected, nor unforeseen;
- ERCOT had a duty to take reasonable corrective actions when it became clear that its own projections showed insufficient supply capacity to meet forecast demand;
- ERCOT failed to take reasonable care in estimating and planning the amount of power that would be required in the Winter 2021 season;
- ERCOT's acts and omissions involved an extreme degree of risk of harm to others, including Decedent;
- Despite knowledge of this extreme risk of harm, ERCOT persisted in performing the acts and omissions described herein with a conscious indifference to and reckless disregard of to the rights, safety, or welfare of others; and
- ERCOT's conduct resulting in the death of Decedent reflects an entire want of care and establishes that the acts and omissions in question were the

result of actual conscious indifference to the rights, welfare, or safety of the person affected by it, including without limitation Decedent.  ERCOT's conduct constituted more than momentary thoughtlessness, inadvertence, or error of judgment.

39. *Mauricio and Daysi Marin v. ERCOT et al.*; Cause No. 2021-09497; in the 270th

Judicial District Court of Harris County, Texas:

- ERCOT manages Texas power, schedules its movement and delivery, assesses Texas power needs and forecasts Texas power requirements;
- Plaintiff asserts claims for negligence and gross negligence against ERCOT, alleging specifically: ERCOT failed to adequately assess the electric needs of the State of Texas during Winter Storm Uri;
- The Defendants were well aware of the risk of harm to Plaintiffs yet exhibited conscious indifference to the rights of Plaintiffs, which proximately caused the injuries complained of; and
- Plaintiffs allege that they suffer anxiety and emotional distress.

40. *Donald McCarley v. ERCOT et al.*; Cause No. 2021CCV-60188-1; in the Nueces

County Court at Law No. 1; Nueces County, Texas;

- Plaintiff asserts claims against ERCOT for Violation of Article I, Section 17 of the Texas Constitution, negligence, negligence per se, private nuisance, and gross negligence. Plaintiff specifically alleges:
- ERCOT could have increased electric production capacity in Texas in the days and weeks leading up to the February 2021 cold weather event, but consciously chose not to do so;
- This cold weather event and its effects on the Texas energy grid were neither unprecedented, nor unexpected, nor unforeseen. In fact, similar cold weather events in 1989 and 2011 led to exactly the same type of rolling blackouts that have affected and continue to affect Texas residents and businesses;
- Many of these same power generators, transmitters, and distributors have failed due to ERCOT's refusal to implement reasonable remedies recommended after winter storms in 1989 and 2011;
- ERCOT failed to take reasonable care in estimating and planning the amount of power that would be required in the Winter 2021 season;
- ERCOT failed to take reasonable corrective actions when it became clear that its own projections showed insufficient supply capacity to meet forecast demand; and
- Despite knowledge of this extreme risk of harm, ERCOT persisted in performing the acts and omissions described herein with a conscious

indifference to and reckless disregard of to the rights, safety, or welfare of others.

41.     ***Steven Napier, Individually. and as representative of the estate of Shirley Napier v. ERCOT et al.*; Cause No. 2021-12198; in the 333rd Judicial District Court of Harris County, Texas**:

- Defendants knew this storm was coming, knew they were not prepared, knew danger was at hand, knew lives were at risk, and instead of warning its customers (because to do so would reveal their own incompetence and greed) Defendants just turned the power off in the middle of the night and left people to die;
- This cold weather event was entirely foreseeable to Defendants;
- Defendants failed to take reasonable care to prevent failure and to maintain and update its generation, transmission, and distribution facilities;
- The overall grid was managed by ERCOT;
- Previous winter storms had exposed the danger to Defendants, but the lessons and warnings were not heeded;
- ERCOT's actions were knowing and malicious; and
- Plaintiffs seek punitive damages.

42.     ***Mary Ellen Nava v. ERCOT et al.*; Cause No. C-0710-21-B; in the 93rd Judicial District Court of Hidalgo County, Texas**:

- ERCOT manages the Texas power grid, schedules power generation and delivery, assesses the state's power needs, forecasts the state's power needs, coordinates and advises about power requirements and delivery;
- Plaintiff asserts claims for negligence and gross negligence against ERCOT, alleging specifically: ERCOT failed to adequately assess the electric needs of the State of Texas during Winter Storm Uri;
- The Defendants were well aware of the risk of harm to Plaintiff yet exhibited conscious indifference to the rights of Plaintiff, which proximately caused the injuries complained of; and
- Plaintiff alleges experiencing anxiety and emotional distress.

43.     ***Maria Elisa Pineda, Ind. a/n/k of Cristian Yafeth Pavon Pineda v. ERCOT* et al.; Cause No. D-207197; in the Jefferson County Judicial District Court, Jefferson County, Texas**:

- ERCOT had a duty to take reasonable care in estimating and planning the amount of power that would be required in the Winter 2021 season;

- ERCOT erred respecting its projections about supply capacity;
- Defendants ERCOT and ENTERGY and others could have increased electric production capacity in Texas in the days and weeks leading up to the February 2021 cold weather event, but consciously chose not to do so;
- This cold weather event and its effects on the Texas energy grid were neither unprecedented, nor unexpected, nor unforeseen;
- Defendant ERCOT failed to take reasonable care in estimating and planning the amount of power that would be required in the Winter 2021 season;
- Defendant ERCOT failed to take reasonable corrective actions when it became clear that its own projections showed insufficient supply capacity to meet forecast demand;
- Despite knowledge of this extreme risk of harm, Defendant ERCOT persisted in performing the acts and omissions described herein with a conscious indifference to and reckless disregard of to the rights, safety, or welfare of others; and
- Plaintiffs seek punitive damages.

44.    *Mariaelena Sanchez, Ind. and on behalf of others similarly situated v. ERCOT*;

**Cause No. 2021-10244; in the 133rd Judicial District Court of Harris County, Texas**:

- Despite numerous recurrent failures and clear warnings, ERCOT has obstinately refused to employ simple common-sense precautions to ensure the reliability and security of its electrical network during cold weather events;
- As early as February 9, 2021, ERCOT was warned that the impending cold weather event may jeopardize the integrity of its electric network if ERCOT failed to take reasonable measures. Despite these clear and unambiguous warnings, ERCOT utterly failed to act with appropriate seriousness or to prevent calamity from befalling its customer;
- Instead of properly assessing its resources and ensuring that enough generating capacity would be available throughout the duration the cold weather event, ERCOT's failure to plan and prepare caused cascading systems failures and widespread blackouts;
- ERCOT's failure to meet foreseeable demand during the February 2021 cold weather events was a direct result of multiple failures to plan and prepare.  Not only did ERCOT fail to reserve enough capacity to meet such foreseeable demands, it completely failed to assess the integrity of its infrastructure, the environmental limitations of its power sources, and how abnormally cold weather may impact the availability of its power sources. As a result, the capacity reserved by ERCOT was wholly unsuited and insufficient to perform or to ensure system reliability during conditions in the February 2021 cold weather event;
- Plaintiff alleges ERCOT was negligent and grossly negligent for: Failing to forecast load and resources needed for anticipated conditions within the seven days preceding the week of February 14, 2021; Failing to perform

fault studies capable of adequately planning or designing system capacities; Failing to assess, monitor and maintain the ERCOT system on a system wide-area basis; Failing to properly model assumptions for emergency operation procedures and make adequate reserves available; Failure to obtain forecasts of real output capability in advance of the anticipated February 2021 cold weather event;

- Defendant was aware that its failures to meet its duties would likely result in the catastrophic loss of system reliability and extensive blackouts. Defendant's prior breaches of these duties in 1989 and 2011 led to those exact results, yet Defendant persisted in ignoring its duties to Plaintiff and class members;

- Defendant further was aware that catastrophic loss of system reliability during a cold weather event could result in the death, widespread human suffering, and damages to property of its retail customers; and

- Despite knowledge of this extreme risk of harm, Defendant persisted in its course of conduct with a conscious and callous indifference to, and reckless disregard of its rights, safety, and welfare of Plaintiff and Class Members.

45.     *Herlinda Trujillo v. ERCOT at al.*; **Cause No. 2021-11566; in the 80th Judicial District Court, Harris County, Texas**:

- ERCOT manages, schedules, assesses, forecasts, coordinates and advises about Texas power requirements and supply;

- ERCOT failed to adequately assess the electricity needs of Texas's residents. ERCOT's forecast for the maximum electricity that would be consumed far under-estimated the reality;

- ERCOT was negligent and grossly negligent for: failing to adequately assess the electric needs of the State of Texas during Winter Storm Uri; failing to obtain additional electricity once it became obvious that the entity had failed to adequately assess the electric needs of the state;

- Defendants were well aware of the risk of harm to plaintiff yet exhibited conscious indifference to the rights of Plaintiff; and

- Plaintiff alleges anxiety and emotional distress.

46.     *Melissa Villanueva et al. v. ERCOT et al.*; **Cause No. 21-02-60953-CV; in the 79th Judicial District Court, Jim Wells County, Texas**:

- ERCOT failed to timely increase production;

- ERCOT failed to anticipate energy demands;

- ERCOT had a duty to take reasonable care in estimating and planning power needs for the 2021 winter season;

- ERCOT had a duty to take reasonable corrective actions respecting its power projections;

- Defendants ERCOT, AEP, and AEP Texas, and others could have increased electric production capacity in Texas in the days and weeks leading up to the February 2021 cold weather event, but consciously chose not to do so;
- This cold weather event and its effects on the Texas energy grid were neither unprecedented, nor unexpected, nor unforeseen;
- Despite knowledge of this extreme risk of harm, Defendant ERCOT persisted in performing the acts and omissions described herein with a conscious indifference to and reckless disregard of to the rights, safety, or welfare of others;
- Plaintiffs seek punitive damages; and
- ERCOT caused Plaintiff's decedent to lose power.

47. **Civil Investigative Demand from the Texas Office of the Attorney General,**

**Consumer Protection Division:**

- Pursuant to the Texas Attorney General's specific authority under article IV, section 22 of the Texas Constitution and section 17.61 of the Texas Deceptive Trade Practices – Consumer Protection Act, sections 17.41-.63, Texas Business and Commerce Code ("DTPA"), Electric Reliability Council of Texas, Inc. was directed to produce documents pertaining to the February 2021 cold weather event.
- On information and belief, no lawsuit has been filed in connection to this investigative demand against ERCOT.

48. **Texas Reliability Entity, Inc. Notice to Preserve Documentation – Data Hold**

**Regarding Extreme Cold Weather Event During February 2021:**

- On February 17, 2021, The Texas Reliability Entity, Inc. ("Texas RE") sent a confidential Notice to Preserve Documentation related to *Winter Storm Uri*, including: Operational communication, including operator logs, recorded voice communications, and e-mails and other forms of communication to or from operations staff that may be directly or indirectly related or relevant to the Event; System operational data, outage reporting and scheduling, fuel surveys, entity operating plans and related material and; Study cases and results from on-line or off-line contingency analysis or stability analysis.

- On information and belief no lawsuit has been filed in connection with notice to preserve documentation, and Texas RE is not seeking or demanding damages related to any claim for bodily injury or property damage.

49.    *The City of Denton v. ERCOT et al.*; Cause No. 21-1421-16; in the 16th Judicial District Court, Denton County, Texas:

- The City of Denton filed a suit ("City of Denton Lawsuit") for declaratory judgment and application for temporary restraining order and temporary injunction, alleging ERCOT violated Article XI, Section 3 and Article III, Section 52(a) of the Texas Constitution by requiring the City to pay funds and lend its credit to cover private debts.
- Denton's complaint is directed to billing for electricity and the deliberate failure of some communities to pay for electricity that they use.
- Denton's complaint is based on certain contracts to which it, and other communities, are parties.
- Denton's does not seek damages. Rather, it seeks an injunction.
- There are no allegations of bodily injury or property damage.

## NO COVERAGE FOR THE CLAIMS

50.    Cincinnati has no obligation under the Policy to defend or indemnify ERCOT in connection with the Underlying Matters, including the Underlying Lawsuits.

51.    There is no duty to defend or indemnify the Underlying Matters because there is no occurrence. In order for there to be an occurrence, there must be an accident. An accident is a fortuitous, unexpected, and unintended event.

52.    None of the allegations in the Underlying Lawsuits assert that the alleged damages were caused by any accident. In fact, each asserts facts to the contrary. The allegations in the Underlying Lawsuits allege ERCOT either knew, should have known, expected, and/or intended, that *Winter Storm Uri* would cause the same power outages which occurred as a result of previous storms in Texas, including storms in 1989 and 2011.

53.    The Underlying Lawsuits allege the power outages caused by *Winter Storm Uri* were a result of the exact same failures including failures of the same generators which failed in the previous winter storms, and therefore, the power outages were foreseeable, expected, and/or intended.

54.     The damages alleged in the Underlying Lawsuits were not caused by an accident, and the Claims do not satisfy the Policy's insuring agreement for Bodily Injury or Property Damage Coverages.

55.     In addition and/or in the alternative, coverage is precluded by the exclusion for Expected or Intended Injury.

56.     In addition and/or in the alternative, coverage is precluded by the exclusion for Contractual Liability.

57.     In addition and/or in the alternative, coverage is precluded by the Policy's exclusion for Testing or Consulting Errors and Omissions.

58.     In addition and/or in the alternative, coverage is precluded under the Policy by the Failure to Supply Exclusion.

59.     In addition, any claim which does not allege damages for bodily injury or property damage is not covered.

60.     On information and belief, there may be additional underlying claims or suits against ERCOT resulting from the power outages due to *Winter Storm Uri* for which no notice has been given to Cincinnati. To the extent there are additional underlying matters, it is Cincinnati's intention that they be included in and addressed by this complaint. To the extent that any such additional underlying matters arise, Cincinnati will seek to amend this complaint to add them.

61.     There is no provision, term, or condition of the Policy that provides coverage to ERCOT for the claims set forth in the Underlying Matters which make the basis of this declaratory judgment action.

62.     Because ERCOT seeks coverage for the Underlying Matters, and Cincinnati denies a duty to defend and/or indemnify them, there exists an actual controversy of a justiciable nature between Cincinnati and ERCOT concerning the rights and obligations of the parties to the insurance contract.

63.     Cincinnati has complied with all terms, conditions and provisions of the insurance Policy and specifically reserves any and all rights and defenses it has or may have under the Policy, including additional rights and defenses that may become apparent throughout the course of discovery in this case.

64.     By virtue of the foregoing, a declaratory judgment is both necessary and proper in order to set forth and determine the rights, obligations, and liabilities that exist between the parties in connection to the aforementioned Policy.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, The Cincinnati Insurance Company, prays that this Court enter judgment in its favor and against Defendant ERCOT declaring:

A.     That it has no duty to defend ERCOT with respect to the Underlying Matters including the Underlying Lawsuits;

B.     That it has no duty to indemnify ERCOT with respect to the Underlying Matters including the Underlying Lawsuits;

C.     For such other and further relief as the Court deems just and equitable under the circumstances.

Respectfully submitted,


*/s/ S. Jan Hueber*
_____
**S. Jan Hueber**
State Bar No. 20331150
Hueber@litchfieldcavo.com
**Mahan V. Wright**
State Bar No. 24096880
wrightM@litchfieldcavo.com
**LITCHFIELD CAVO LLP**
100 Throckmorton St., Ste. 500
Fort Worth, Texas 76102
Telephone: (817) 945-8025
Facsimile: (817) 753-3232

**ATTORNEYS FOR PLAINTIFF**
**THE CINCINNATI INSURANCE COMPANY**