**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **THE CINCINNATI INSURANCE COMPANY,** | § § § § | |
| *Plaintiff,* | § § | |
| | § | **CASE NO. 1:21-cv-298 LY** |
| **v.** | § § | |
| | § | **JUDGE: Lee Yeakel** |
| **ELECTRIC RELIABILITY COUNCIL OF TEXAS, INC.,** | § § | |
| | § § | |
| *Defendant.* | § | |

## FIRST AMENDED COMPLAINT FOR DECLARATORY JUDGMENT

COMES NOW The Cincinnati Insurance Company ("Cincinnati"), seeking Declaratory Judgment and other relief under 28 U.S.C. §§ 2201 and 2202 and Rule 57 of the Federal Rules of Civil Procedure, and in support of its First Amended Complaint, Cincinnati respectfully states as follows:

## NATURE OF THE ACTION

1.       Cincinnati respectfully requests the Court to issue a judgment pursuant to 28 U.S.C. § 2201, declaring that the policy of insurance issued by Cincinnati to Electric Reliability Council of Texas, Inc. ("ERCOT"), does not require Cincinnati to defend or indemnify ERCOT in connection with certain underlying matters, including 130 separate lawsuits against ERCOT. These suits seek damages arising out of the mid-February 2021 *Winter Storm Uri* and the related power outages that occurred across the state of Texas. This declaratory judgment is requested in

order to determine an actual controversy between the parties regarding insurance coverage for ERCOT in relation to the underlying matters.

## PARTIES

2.      Cincinnati is an Ohio corporation with its principal place of business in Fairfield, Ohio. Cincinnati has never been a citizen of the State of Texas, is still not a citizen of the State of Texas, and is currently a citizen of the State of Ohio.

3.      ERCOT is a Texas nonprofit corporation with its principal place of business in Austin, Texas, and is a citizen of the State of Texas. The registered agent for ERCOT is Bill Magness, 7620 Metro Center Drive, Austin, TX 78744, who is also a citizen of the State of Texas. ERCOT has waived service of process.

## JURISDICTION

4.      This Court has subject matter jurisdiction under 28 U.S.C. § 1332 because the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000), exclusive of costs, interest, and attorney's fees, and there exists complete diversity of citizenship.

## VENUE

5.      Venue is proper in the Western District of Texas under 28 U.S.C. § 1391(b) because ERCOT has its principal place of business in Austin, Texas, and the events giving rise to this lawsuit occurred in this district.

## FACTUAL BACKGROUND

### A.  The Policy

6.      Cincinnati issued policy number ENP 017 12 52 to ERCOT (the "Policy"). The Policy includes Commercial General Liability ("CGL") Coverage. The Policy was effective from June 1, 2019 to June 1, 2022.

7. The Policy was issued and delivered to ERCOT through ERCOT's insurance agency, Marsh Wortham, a division of Marsh USA, Inc. ("Marsh"). Marsh is located in Austin, Texas.

8. The Policy's Insuring Agreement for Coverage A, which applies to Bodily Injury or Property Damage, provides:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:
>
> **(1)** The amount we will pay for damages is limited as described in **SECTION III - LIMITS OF INSURANCE;** and
> **(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under **SECTION I - COVERAGES, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY; SECTION I -COVERAGES, COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY;** or medical expenses under **SECTION I - COVERAGES, COVERAGE C.**
> **MEDICAL PAYMENTS.** No other obligation or liability to pay sums or perform acts or services is covered unless expressly provided for under **SUPPLEMENTARY PAYMENTS - COVERAGES A AND B.**

9. "Occurrence" is defined by the Policy to mean: "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

10. "Property damage" is defined by the Policy to mean:

> **a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
>
> **b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it. For the purposes of this insurance, "electronic data" is not tangible property.

11. "Bodily injury" is defined by the policy to mean: "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time."

12. The Policy defines "Suit" as follows:

"Suit" means a civil proceeding in which money damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:
**a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent;
**b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent; or
**c.** An appeal of a civil proceeding.

13. The Policy contains the following exclusions applicable to Coverage A, the coverage for Bodily Injury or Property Damage:

This insurance does not apply to:

**a. Expected or Intended Injury**
"Bodily injury" or "property damage" which results from the intentional or criminal acts of the insured or which is in fact expected or intended by the insured, even if the injury or damage is of a different degree or type than actually expected or intended. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b. Contractual Liability**
"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. When a claim for such "bodily injury" or "property damage" is made, we will defend that claim provided the insured has assumed the obligation to defend such claim in the "insured contract". Such defense payments will not reduce the limits of insurance.

14. The following two exclusions are endorsed onto the policy:

**EXCLUSION – TESTING OR CONSULTING ERRORS AND OMISSIONS (CG 22 33 04 13)**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph **2. Exclusions** of **Section I - Coverage A – Bodily Injury And Property Damage Liability** and Paragraph **2. Exclusions** of **Section I – Coverage B - Personal And Advertising Injury Liability:**

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of:
  1. An error, omission, defect or deficiency in:
  a. Any test performed; or
  b. An evaluation, a consultation or advice given;

    by or on behalf of any insured;

  2. The reporting of or reliance upon any such test, evaluation, consultation or advice; or
  3. An error, omission, defect or deficiency in experimental data or the insured's interpretation of that data.

* * *

**EXCLUSION - FAILURE TO SUPPLY (CG 22 50 04 13)**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

This insurance does not apply to "bodily injury" or "property damage" arising out of the failure of any insured to adequately supply gas, oil, water, electricity, steam or biofuel.

This exclusion does not apply if the failure to supply results from the sudden and accidental injury to tangible property owned or used by any insured to procure, produce, process or transmit the gas, oil, water, electricity, steam or biofuel.

* * *

**B. Winter Storm Uri**

15.     The February 13–17, 2021 North American winter storm, unofficially referred to as *Winter Storm Uri*, was a major cold weather, ice storm. It had widespread impacts across the United States, with the worst of the storm's effects being in Texas.  The storm's effects began as early as February 5, 2021.

16.     On February 14–15, 2021, *Winter Storm Uri* brought snow, ice, and freezing temperatures across Texas. As a result, power equipment—unable to sustain the higher-than-normal energy and heating demand from residential and business customers—failed across Texas. At the peak of the outages, at least 4.5 million Texas residents were left without electricity. ERCOT ordered rolling blackouts in an attempt to manage the power grid and prevent widespread, long-duration blackouts.

17.     ERCOT supplies, evaluates, consults, advises and provides testing regarding the flow of electric power to more than 26 million Texas customers -- representing about 90 percent of the state's electric load. As the independent system manager for the region, and based on its evaluations, consultation, advice and testing, ERCOT schedules power on an electric grid that connects more than 46,500 miles of transmission lines and 680+ generation units.

18.     ERCOT describes itself as an "air traffic controller" in everyday parlance.  Just as the air traffic control tower evaluates which planes are approved to land on a particular runway at a particular time, ERCOT evaluates where to send electrical power and in what amounts to achieve adequate service and supply of real-time demands for electricity.

**C. The Underlying Claims and Suits**

19.     Since March 4, 2021, Marsh notified Cincinnati of over 100 underlying lawsuits ("the Underlying Lawsuits") against ERCOT and several non-lawsuit, underlying matters (the

Underlying Lawsuits and the non-lawsuit underlying matters are collectively "the Underlying Matters."). The underlying matters that are not suits are notices of claims, a request to preserve documents and information and to produce documents or information, petitions for injunction and/or declaratory relief, and objections to ERCOT's proof of claims in bankruptcy proceedings. Marsh sought insurance coverage on ERCOT's behalf for the Underlying Matters. The Underlying Lawsuits include claims for negligence, negligence per se, gross negligence, private nuisance, civil conspiracy, and claims under the Texas Deceptive Trade Practices Act. All of the Underlying Matters arise out of power outages due to *Winter Storm Uri*.

20. On or about March 4, 2021, Cincinnati was advised that ERCOT retained Elliot Clark of Winstead P.C. to represent ERCOT in litigation matters related to the February 2021 Extreme Cold Event.

21. On March 18, 2021, June 8, 2021, July 1, 2021, November 15, 2021, December 1, 2021, January 11, 2022, March 9, 2022, and May 20, 2022, Cincinnati sent ERCOT preliminary Reservation of Rights letters. The Reservation of Rights letters included requests for information made to facilitate Cincinnati's coverage investigation of the Underlying Matters.

22. Cincinnati received a global response from ERCOT regarding its request for documents wherein ERCOT stated it would be willing to produce documents related to the Underlying Matters if Cincinnati agreed to provide it with a defense for those lawsuits.

23. Cincinnati issued coverage position letters based on the allegations and statements in the Underlying Matters and known information regarding them (the "Coverage Position Letters"). For the reasons described in the Coverage Position Letters and as further set forth in this Complaint, the Policy does not provide a duty to defend or indemnify the Underlying Matters, including the Underlying Lawsuits.

24.     In an Order dated June 10, 2021, the Panel on Multi-District Litigation (the "Panel") granted a motion to transfer to establish an MDL court for cases alleging that wrongful conduct of ERCOT and other defendants caused power shortages and electrical outages during Winter Storm URI and damaged plaintiffs. See MDL No. 21-0313. On June 30, 2021, pursuant to Administrative Rule 13.6(a), Chief Justice Nathan L. Hecht of The Supreme Court of Texas authorized the Honorable Sylvia A. Matthews, former district judge, to serve as a pretrial judge upon assignment by the Panel. By Order dated July 7, 2021, the Panel designated the 281st District Court of Harris County, Texas as the Pretrial Court and assigned the Honorable Sylvia A. Matthews to serve as the Pretrial Judge.

25.     The Panel transferred to the Pretrial Court: all cases listed in Appendix A to ERCOT's April 7, 2021 Motion to Transfer and in Appendix A to the Notices of Related Proceedings and Joinders filed by Luminant, CPS, CenterPoint, and Oncor (and as otherwise described in the Panel's June 10, 2021 Order Granting the Motion to Transfer); and all tag-along cases. It was ordered that Cause No. 2021-41903, In Re Winter Storm Uri Litigation, pending in the 281st District Court, Harris County be the Master File for the cases transferred and tagged in pursuant to the Panel's Orders in MDL Docket No. 21-0313.

26.     Since the June 10, 2021 order, additional Notices of Tag-Along Cases were filed in the Master File for the MDL. On July 26, 2021, the Honorable Sylvia A. Matthews ordered all cases transferred to and pending in the Pretrial Court be stayed until entry of a case management order. On December 15, 2021, entered Case Management Order No. 1 which established deadlines for Plaintiffs to file any amended pleadings, to select no more than five representative petitions (the "Selected Cases") for which the Court would lift the stay to allow dispositive and

other responsive pleas to be filed to address issues, including but not limited to, of sovereign or governmental immunity and subject matter jurisdiction.

27. On or after this date, Plaintiffs in the Underlying Lawsuits filed amended petitions pursuant to Case Management Order No. 1. Many Plaintiffs filed amended petitions with the same or substantially similar allegations against ERCOT (the "Master Petition"). The Master Petition includes the following allegations:

a) Plaintiff(s) allege causes of action against ERCOT for negligence, gross negligence, private nuisance, and civil conspiracy.

b) Plaintiff(s) are individuals who bring this action arising out of loss of life, and/or who sustained personal injuries and/or damage to their property and/or businesses or other losses during the February 2021 cold weather because the defendants' wrongful acts and omissions resulted in a loss of electricity to Plaintiff(s) during their time of greatest need.

c) The Defendants (including ERCOT) were aware of the impending Winter Storm Uri before it struck in February of 2021.

d) The cold weather event predictably caused increased energy demands across the state as Texans tried to keep their homes and businesses warm, with a total ERCOT actual energy demand peaking at 69,692 megawatts by 8:00 p.m. on February 14, 2021. A peak demand load of 69,692 megawatts was by no means unforeseeable within the ERCOT system because the ERCOT system had already experienced similar load levels during periods of peak demand.

e) The wrongful acts and omissions of the Defendants had catastrophic consequences and caused Plaintiffs to suffer death, personal injuries, damage to their residential and/or business property, and/or have substantially interfered with the use and enjoyment of Plaintiffs' residential and/or business property.

f) Prior to February 2021 winter storm, ERCOT and TDUs had been warned that shutting off some industrial users could cause the loss of generation capacity.

g) Instead of learning the lessons of its failures in 1989 and 2011, and with full knowledge that the failure to ensure system reliability during cold weather could result in death, widespread misery, and the destruction of property, ERCOT repeated these failures yet again in February 2021.

h) Indeed, ERCOT relied on many of the same Power Generators that failed in 1989 and 2011 during the February 2021 winter storm. Unsurprisingly, these Power Generators, and others that were not properly suited to function in the forecasted conditions, failed yet again. Millions were forced to needlessly suffer as a result.

i) As early as February 9, 2021, ERCOT was warned that the impending cold weather event may jeopardize the integrity of its electrical network if ERCOT failed to take reasonable measures.

j) Despite these clear and unambiguous warnings, ERCOT utterly failed to act with appropriate seriousness or to prevent calamity from befalling its customers.

Instead of properly assessing its resources and ensuring that enough generating capacity would be available throughout the duration the cold weather event, ERCOT's failures to plan and prepare caused cascading systems failures and widespread blackouts. Over 4.1 million Texans were forced to endure freezing temperatures for dangerous lengths of time as a result.

k) ERCOT's failure to meet foreseeable demand during the February 2021 winter storm was a direct result of multiple failures to plan and prepare. Not only did ERCOT fail to reserve enough capacity to meet such foreseeable demands, it completely failed to assess the integrity of its infrastructure, the environmental limitations of its power sources, and how abnormally cold weather could affect the availability of its power sources. As a result, the capacity reserved by ERCOT was wholly unsuited and insufficient to perform or to ensure system reliability during anticipated conditions in the February 2021 cold weather event.

l) ERCOT's failure to reserve sufficient capacity from generating sources capable of operating reliably in forecasted conditions caused numerous ERCOT generating units to fail, trip, or derate during the February 2021 cold weather event.

m) These failures were neither unprecedented nor unforeseen. In fact, ERCOT's failures are made all the more egregious because they were foreseen and had occurred before.

n) Because of these failures, millions were forced to endure days-long blackouts in freezing cold weather. People died as a result. Millions more endured traumatic hardship short of death.

o) Plaintiff(s) lost electrical services due to ERCOT's failures to plan and prepare for the February 2021 winter storm. The outages lasted several days, during which Plaintiff(s) endured suffering, hardship, and damages as described further herein.

p) Plaintiff(s) suffered great inconvenience, anguish, and fear as a result of being forced to endure dire conditions. This all could have been avoided had ERCOT exercised a modicum of care in planning and preparing for the February 2021 winter storm.

q) ERCOT's behavior was egregious, unreasonable, and in no way guided by good utility practice.

r) At all relevant times, ERCOT had control of operational planning, load forecasting, securing enough generating capacity to maintain system reliability, assessing the reliability of the generating units within its region- in both normal and abnormal operating conditions, contingency planning, planning for system reserves in the event of higher than anticipated demand and/or lower than anticipated generating supply, and ensuring that adequate supply would be capable of meeting demand during reasonably anticipated conditions.

s) The conditions during the February 2021 winter storm were both reasonably foreseeable and actually anticipated by ERCOT and others. Days before the onset of the storm, and when ERCOT still had the ability to take reasonable measures that would have prevented a loss of system reliability, ERCOT was warned that such measures were necessary.

t) ERCOT's loss of system reliability, and the resulting damages to plaintiff(s), were avoidable and would have been prevented had ERCOT acted reasonably or employed good utility practice.

u) Defendant ERCOT had a duty to ensure reliable performance of the ERCOT system during normal and abnormal conditions. Defendant ERCOT further had the duties to assess, monitor, plan, operate, and maintain the ERCOT system in a way that guaranteed the system would perform reliably under anticipated conditions, and breached these duties.

v) The Defendant's conduct as described herein, when viewed objectively from the standpoint of the Defendant, at the time of its occurrence, involved an extreme degree of risk, considering the extreme degree of risk and probability and magnitude of the potential harm to others and of which the Defendant had actual, subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others.

w) As a result of the Defendants' negligence and gross negligence, Plaintiff(s) incurred property damages, substantial interference with the use and enjoyment of property, out of pocket losses, medical expenses in the past and future, lost wages and lost future earning capacity, extreme mental anguish and suffering, and other injuries and damages.

x) In the all too numerous instances where Texans lost a loved one in this storm, they are entitled to recover for lost earning capacity, lost care, maintenance, services, support, advice, and counsel that the loved one would have provided them, mental and emotional anguish, pain, and suffering, lost love, companionship, comfort, and society, and lost inheritance, including what the loved one would likely have saved and left to them if he or she had lived a normal expected lifetime. The loved one's estate is entitled to the recovery of damages for what they would have been able to recover if they were alive to bring a lawsuit. Recoverable survival damages include the physical pain and suffering and the mental anguish that they experienced before dying, medical expenses, and burial expenses.

28.     The following Plaintiffs in the Underlying Lawsuits filed amended petitions following the Master Petition:

29.     *A2/Falls on Bull Creek et al. v. ERCOT et al*., Cause No. D-1-GN-21-001097 in the 250th Judicial District Court of Travis County, Texas, transferred to Master Cause No. 2021-41903 in the Harris County 281st Judicial District Court, MDL Case No. 5.00138.

30.     *Boyet Abito et al. v. ERCOT*; Cause No. D-1-GN-21-005706 in the 99th Judicial District court of Travis County, Texas, transferred to Master Cause No. 2021-41903 in the Harris County 281st Judicial District Court, MDL Case No. 5.00169.

31.     *Guillermo Alonso, Cynthia Alonso et al. v. ERCOT et al.*; Cause No. 2021CVH00413D1; in the 49th Judicial District Court of Webb County, Texas, transferred to

Master Cause No. 2021-41903 in the Harris County 281st Judicial District Court, MDL Case No. 5.00013.

32.     *Bay Oaks IV, LP et al. (28 Plaintiffs) v. ERCOT et al*.; Cause No. 2021-14061, in the 55th Judicial District Court of Harris County, Texas, transferred to Master Cause No. 2021-41903 in the Harris County 281st Judicial District Court, MDL Case No. 5.00098.

33.     *Robert Beasley v. ERCOT et al*., Cause No. 2021-46438 in the 113th Judicial District Court of Harris County, Texas, transferred to Master Cause No. 2021-41903 in the Harris County 281st Judicial District Court, MDL Case No. 5.00151.

34.     *Donna Boatright, Ind. and on behalf of the Estate of Benny Boatright*; Cause No. 2022-12133 in the 61st Judicial District Court of Harris County, Texas, tagged into Master Cause No. 2021-41903 in the Harris County 281st Judicial District Court, MDL Case No. 5.00184.

35.     *Mary Borton on behalf of the estate of Clyde Borton v. ERCOT et al*., Cause No. 2021-41134 in the 270th Judicial Court of Harris County, Texas, transferred to Master Cause No. 2021-41903 in the Harris County 281st Judicial District Court, MDL Case No. 5.00147.

36.     *Barbara Butler v. ERCOT et al*.; Cause No. 2021-19725 in the 127th Judicial District Court of Harris County, Texas, transferred to Master Cause No. 2021-41903 in the Harris County 281st Judicial District Court, MDL Case No. 5.00086.

37.     *Glenda Coleman, Ind. and on behalf of the Estate of Dewayne Randolph*; Cause No. 20211-18526 in the 80th Judicial District Court of Harris County, Texas, transferred to Master Cause No. 2021-41903 in the Harris County 281st Judicial District Court, MDL Case No. 5.00028.

38.     *Sonya Coleman, Ind. and on behalf of the Estate of Jackie Jones*; Cause No. 2021-18539 in the 133rd Judicial District Court of Harris County, Texas, transferred to Master Cause No. 2021-41903 in the Harris County 281st Judicial District Court, MDL Case No. 5.00030.

39.     *Patricia Dillingham Ind. and on behalf of estate of Catherine Dillingham v. ERCOT et al*.; Cause No. 2021-41423 in the 113th Judicial District Court of Harris County, Texas, transferred to Master Cause No. 2021-41903 in the Harris County 281st Judicial District Court, MDL Case No. 5.00149.

40.     *Jane Doe 1, Ind. and as the personal representative of the estate of Jane Doe 2, Jane Doe 3, Jane Doe 4 v. ERCOT et al*.; Cause No. 2021-14056 in the 55th Judicial District Court of Harris County, Texas, transferred to Master Cause No. 2021-41903 in the Harris County 281st Judicial District Court, MDL Case No. 5.00015.

41.     *Bernadine Edwards, Ind. and on behalf of heirs of Lauralene Butler Jackson v. ERCOT et al*.; Cause No. DC-21-03527 in the 14th Judicial District Court of Dallas County, Texas, transferred to Cause No. 2021-84438 in the Harris County 281st Judicial District Court, MDL Case No. 5.00036.

42.     *Edwards Restoration, LLC v. Sam Cain V. ERCOT et al*.; Cause No. C2137222 in the 145th District Court of Nacogdoches County, Texas.f

43.     *P.L. Farley and Grover Silas v. ERCOT et al*.; Cause No. 2021-11451; in the 80th Judicial District Court, Harris County, Texas, transferred to Master Cause No. 2021-41903 in the Harris County 281st Judicial District Court, MDL Case No. 5.00008.

44.     *Gilberto Garcia, Jr. a/n/k of Gilberto Garcia, Sr. v. ERCOT et al*.; in the 111th Judicial District Court of Webb County, Texas, transferred to Master Cause No. 2021-41903 in the Harris County 281st Judicial District Court, MDL Case No. 5.00144.

45.     *John Greenhaw v. ERCOT et al*.; Cause No. D-1-GN-21-001666 in the 455th Judicial District Court of Travis County, Texas, transferred to Master Cause No. 2021-41903 in the Harris County 281st Judicial District Court, MDL Case No. 5.00142.

46.     *Hogan et al. v. ERCOT et al*., Cause No. 2021-CI-04061 in the 45th Judicial District of Bexar County, Texas, transferred to Master Cause No. 2021-41903 in the Harris County 281st Judicial District Court, MDL Case No. 5.00053.

47.     *Dolores Jackson, Ind. and on behalf of the estate of Elizabeth Jackson v. ERCOT*; Cause No. 2021-12268; in the 61st Judicial District Court of Harris County, Texas, transferred to Master Cause No. 2021-41903 in the Harris County 281st Judicial District Court, MDL Case No. 5.00012.

48.     *August Jaehne, Ind. and on behalf of the Estate of Edwin Jaehne v. ERCOT et al.*, Cause No. 2021-46436 in the 129th Judicial District Court of Harris County, Texas, transferred to Master Cause No. 2021-41903 in the Harris County 281st Judicial District Court, MDL Case No. 5.00150.

49.     *Latitude 6400, LLC and Terrain at Medical Center LLC v. ERCOT et al*., Cause No. 2021-CI-04451 in the 73rd Judicial District of Bexar County, Texas, transferred to Master Cause No. 2021-41903 in the Harris County 281st Judicial District Court, MDL Case No. 5.00054.

50.     *Laredo Apartments I, LLC v. ERCOT et al*.; in the 406th Judicial District Court of Webb County, Texas, transferred to Master Cause No. 2021-41903 in the Harris County 281st Judicial District Court, MDL Case No. 5.00137.

51.     *Charles Lindsey, Ind. and as representative of the Estate of Charlotte Ann Lindsey v. ERCOT et al*., Cause No. CV-21-0839 in the 15th Judicial District Court of Grayson County, Texas, transferred to Master Cause No. 2021-41903 in the Harris County 281st Judicial District Court, MDL Case No. 5.00145.

52. *Lure Apartments Dallas, LLC et al. v. ERCOT et al*.; Cause No. DC-21-03103, in the 134th Judicial District Court of Dallas County, Texas, transferred to Master Cause No. 2021-41903 in the Harris County 281st Judicial District Court, MDL Case No. 5.00134.

53. *Steven Napier, Ind. and as representative of the estate of Shirley Napier v. ERCOT et al.*; Cause No. 2021-12198; in the 333rd Judicial District Court of Harris County, Texas, transferred to Master Cause No. 2021-41903 in the Harris County 281st Judicial District Court, MDL Case No. 5.00011.

54. *Ernest Peterman, Ind. and on behalf of the Estate of Ella Peterman*; Cause No. 2021-18532 in the 164th Judicial District Court of Harris County, Texas, transferred to Master Cause No. 2021-18532 in the Harris County 281st Judicial District Court, MDL Case No. 5.00029.

55. *Fernando Ramirez Individually and on the behalf of Estate of Eva Santoya v. ERCOT et al.*, Cause No. 2021-41117 in the 270th Judicial Court of Harris County, Texas, transferred to Master Cause No. 2021-41903 in the Harris County 281st Judicial District Court, MDL Case No. 5.000146.

56. *Guy Edward Stone v. ERCOT et al.*; Cause No. 2021DCV-3138-H, in the 347th Judicial District court of Nueces County, Texas, transferred to Master Cause No. 2021-41903 in the Harris County 281st Judicial District Court, MDL Case No. 5.00159.

57. *Randy Turner obo Terrill Turner, et al. v. ERCOT et al.*; Cause No. 2021-24797 in the 164th Judicial District Court of Harris County, Texas, transferred to Master Cause No. 2021-41903 in the Harris County 281st Judicial District Court, MDL Case No. 5.00140.

58. *Robert White, Nic Kamish, Lacy Grejcha et al. v. ERCOT et al.*; Cause No. 2021-11686 in the 157th Judicial District Court of Harris County, Texas, transferred to Master Cause No. 2021-41903 in the Harris County 281st Judicial District Court, MDL Case No. 5.00163.

59.     The following Plaintiffs in the Underlying Lawsuits filed amended petitions following the Master Petition, but also included additional specific allegations:

60.     *Maria Aguilar, Ind. and a/n/k of Florentina Flores v. ERCOT et al.*; in the 45th Judicial District of Bexar County, Texas, transferred to Master Cause No. 2021-41903 in the Harris County 281st Judicial District Court, MDL Case No. 5.00034:

> a) Decedent suffered personal injuries and loss of life resulting in medical bills, property damage, and funeral expenses and Plaintiffs have suffered loss of society and companionship, pecuniary loss, and mental anguish due to Defendants' failure to properly prepare for freezing weather and/or otherwise properly conduct their operations before and during the February 2021 Winter Storm Uri.
>
> b) Ms. Flores was medically dependent on an oxygen machine to sustain her life. The oxygen machine required electricity to function and did not have back-up battery capability. When the electricity was turned off, the oxygen machine became completely inoperable. Ms. Flores immediately began struggling to breathe, her body unable to take in enough oxygen to sustain her life. On information and belief, Florentina Flores, Decedent, died of oxygen deprivation as a direct result of the power outage, which deprived her of electricity in her home.

61.     *Dimitri Beck v. ERCOT et al.*; Cause No. 2021-13927; in the 215th Judicial District Court of Harris County, Texas, transferred to Master Cause No. 2021-41903 in the Harris County 281st Judicial District Court, MDL Case No. 5.00014:

> a) This suit is brought on behalf of the named Plaintiff who is a citizen of the State of Texas and who sustained personal injuries and other losses during the February 2021 Winter Storm Uri because the Defendants failed to properly prepare for such cold weather and/or otherwise failed to properly conduct their operations before and during the February 2021 Winter Storm Uri.
>
> b) As a result of her medical conditions, Plaintiff requires the use of a CPAP machine as well as a machine to provide her with oxygen. She requires oxygen 24 hours per day. Unfortunately, as a result of the power outages inflicted by the Defendants, Plaintiff was left without power, and was unable to use her medical equipment to allow her to breathe. As a result of the loss of electricity, Plaintiff suffered extreme anxiety and emotional distress from the situation, in not knowing how long she would be deprived of electrical power that was needed to run her breathing equipment. The consequences to Plaintiff have been painful and will be prolonged, including physical injuries and mental suffering from which she may never recover.

62. *Dustye Billiott, Ind. and as the personal representative of the Estate of Winona Lynn Billiot v. ERCOT et al*., Cause No. D-208173 in the Judicial District Court of Jefferson County, Texas, transferred to Master Cause No. 2021-41903 in the Harris County 281st Judicial District Court, MDL Case No. 5.00157:

    a) As a direct result of Defendants' conduct, Winona Lynn Billiot's home was without power for an extended period of time and she wrongfully died as a result.

63. *Elsa Borrego, Ind. a/n/k of Eliseo Borrego v. ERCOT et al*.; Cause No. DC-21-04166 in the 116th Judicial District Court of Dallas County, Texas, transferred to Master Cause No. 2021-41903 in the Harris County 281st Judicial District Court, MDL Case No. 5.00035:

    a) Plaintiff Elsa Borrego brings this suit Individually, and on behalf of all the Wrongful Death Beneficiaries and Heirs of Eliseo Borrego, Deceased. Decedent suffered personal injuries and loss of life resulting in medical bills, property damage, and funeral expenses and Plaintiffs have suffered loss of society and companionship, as well as mental anguish due to Defendants' failure to properly prepare for such cold weather and/or otherwise properly conduct their operations before and during the February 2021 Winter Storm Uri.

    b) Eliseo was dependent on an oxygen machine to sustain his life. The oxygen machine required electricity to function and did not have back-up battery capability. When the electricity was turned off, the oxygen machine became completely inoperable. On information and belief, Eliseo Borrego, decedent, died due to oxygen deprivation complicated by prolonged exposure to freezing temperatures as a direct result of the power outage, which shut off the electricity in his home.

64. *Brandon and Erin Boucher v. ERCOT et al*.; Cause No. 2021-11920; in the 125th Judicial District Court of Harris County, Texas, transferred to Master Cause No. 2021-41903 in the Harris County 281st Judicial District Court, MDL Case No. 5.00010:

    a) Brandon is a veteran of the United States Marine Corps, honorably discharged in 2012. As a result of the loss of electricity, Brandon suffered extreme anxiety and emotional distress from the situation, in not knowing how long they would be deprived of electrical power. His health condition has deteriorated further as a result, and he has suffered significant personal and mental injury, from which he still suffers. Plaintiff Erin suffered extreme anxiety and panic attacks as a result of the incident and the damages sustained by her husband.

65.    *Robert Alan Brockelman, Ind. a/n/k of Kimberly Smith v. ERCOT et al.*; Cause No. DC-21-03737 in the 191st Judicial District of Dallas County, Texas, transferred to Master Cause No. 2021-41903 in the Harris County 281st Judicial District Court, MDL Case No. 5.00026:

a) Plaintiff Robert Alan Brockelman brings this suit Individually and as the Personal Representative of the Heirs and Estate of Kimberly Smith, Deceased. Decedent suffered personal injuries and loss of life resulting in medical bills, property damage, and funeral expenses and Plaintiff has suffered loss of society and companionship, pecuniary loss, and mental anguish due to Defendants' failure to properly prepare for freezing weather and/or otherwise properly conduct their operations before and during the February 2021 Winter Storm Uri. On information and belief, Ms. Smith developed pneumonia through extended exposure to freezing temperatures as well as her inability to utilize her electric medical bed. The fluid buildup in Ms. Smith's lungs caused her to asphyxiate, depriving her of oxygen and causing catastrophic brain damage.

66.    *Linda Brown, Ind. and a/n/k of Doyle A. Austin v. ERCOT et al.*; and Intervenor Marsha Taghan as Rep. of the Estate of Harold Cox; Cause No. 2021-09733 in the 11th Judicial District Court of Harris County, Texas, transferred to Master Cause No. 2021-41903 in the Harris County 281st Judicial District Court, MDL Case No. 5.00016:

a) Decedent's power was out all day Monday, February 15, 2021, and all Monday night, when the temperature in Houston was approximately 13 degrees. One of Decedent's daughters, who lived with Decedent, checked on Decedent late Tuesday night, believing him to be asleep. Decedent was unresponsive. She called 911. When paramedics arrived, they were unable to revive Decedent. On information and belief, Decedent died of hypothermia as a direct result of the power outage, which deprived him of heat in his home.

b) Intervenor Mr. Cox was dependent on an oxygen machine to sustain his life. Despite long term medical intervention, Mr. Cox passed away on March 21, 2021. Mr. Cox's death was caused by complications related to prolonged deficiency of oxygen and exposure to below freezing temperatures.

67.    *Steven Brown v. ERCOT et al.*; Cause No. DC-21-15386 in the 14th Judicial District Court of Dallas County, Texas, transferred to Master Cause No. 2021-41903 in the Harris County 281st Judicial District Court, MDL Case No. 5.00156:

a) Plaintiff Steven Brown brings this suit as result personal injuries he suffered resulting other damages such as past and future medical bills, lost wages, pain and suffering, and mental anguish among others, due to Defendants' failure to properly prepare for freezing weather and/or otherwise properly conduct their operations before and during the February 2021 Winter Storm Uri. Eventually Steven could not feel his feet because of the cold. When the roads cleared he went to Parkland Hospital in Dallas, Texas where he was admitted and treated for frost bit on both feet. Despite medical treatment for his frost bite from the exposure to the below freezing temperatures Steven's right and left legs were amputated below the knee.

68.    *Christopher Burton v. ERCOT et al*.; Cause No. 2021-15801 in the 165th Judicial District Court in Harris County, Texas, transferred to Master Cause No. 2021-41903 in the Harris County 281st Judicial District Court, MDL Case No. 5.00017:

a) Plaintiff was unable to use the medical equipment needed to assist with his breathing. He rationed the limited portable oxygen bottles that he had in an attempt to stay alive. As a result of the loss of electricity, Plaintiff suffered extreme anxiety and emotional distress from the situation, in not knowing how long he would be deprived of electrical power that was needed to run his breathing equipment. His physical and mental health has deteriorated as a result, and he has suffered significant personal injury. As a result of the Defendant's negligence and gross negligence, Plaintiff incurred substantial interference with the use and enjoyment of property, out of pocket losses, medical expenses in the past and future, lost wages and lost future earning capacity, extreme mental anguish and suffering, and other injuries and damages.

69.    *Tracy Calvert, Ind. and as personal representative of the Estate of Bret Calvert v. ERCOT et al*.; Cause No. 2021-23122 in the 113th Judicial District Court of Harris County, Texas, transferred to Master Cause No. 2021-41903 in the Harris County 281st Judicial District Court, MDL Case No. 5.00088**:**

a) As a result of the loss of electricity, the two were extremely cold, and experienced emotional distress from the situation, in not knowing how long they would be deprived of electrical power. Ultimately, it was so cold where he was that Bret lost his life, succumbing to the freezing cold he experienced. Plaintiff suffered extreme anxiety as a result of the incident. He spent hours trying to stay warm, but ultimately was unsuccessful. On Monday evening, Tracy checked on his brother and found him dead as a result of the cold temperature.

70.    *Lorena Carlino, Ind. a/n/k of Steven Carlino v. ERCOT et al.*; in the 8th Judicial

District Court of Nueces County, Texas, transferred to Master Cause No. 2021-41903 in the Harris

County 281st Judicial District Court, MDL Case No. 5.00136:

a) Plaintiff Lorena Carlino brings this suit individually as the surviving spouse under the Texas Wrongful Death and Survival Statutes. Decedent suffered personal injuries and loss of life resulting in medical bills, property damage, and funeral expenses and Plaintiff has suffered loss of society and companionship, pecuniary loss, and mental anguish due to Defendants' failure to properly prepare for freezing weather and/or otherwise properly conduct their operations before and during the February 2021 Winter Storm Uri. Mr. Carlino was medically dependent on an oxygen machine to sustain his life. On information and belief, Steven Carlino, Decedent, died of complications caused by oxygen deprivation and prolonged exposure to freezing temperatures as a direct result of the power outage, which deprived him of electricity in his home.

71.    *Janice Carter a/n/k of Deborah Kiel v. ERCOT et al.;* Cause No. 2021-16443; in

the 333rd Judicial District Court of Harris County, Texas, transferred to Master Cause No. 2021-

41903 in the Harris County 281st Judicial District Court, MDL Case No. 5.00022:

a) By 7:30 PM on Monday, February 15, 2021, 41 hours after Ms. Kiel's electricity was turned off, Ms. Carter was so worried about Ms. Kiel that she decided to brave the roads to go and get her. In a shocking turn, Ms. Kiel never made it to Ms. Carter's vehicle. While gathering her things, Deborah briefly complained that she felt tired. Then, while walking outside with Ms. Carter, Ms. Kiel collapsed in the driveway of her home. Ms. Carter immediately called paramedics and attempted to administer CPR for about 15 minutes until the ambulance arrived. Once on scene, paramedics spent approximately 20 minutes attempting to resuscitate Ms. Kiel. She was then transported to St. Joseph Medical Center in Houston. Tragically, Ms. Kiel was pronounced deceased upon arrival at the hospital. On information and belief, Deborah Kiel, Decedent, died of heart failure caused by hypothermia after spending nearly two days in below-freezing temperatures as a direct result of the power outage, which deprived her of electricity in her home.

72.    *Michael Clark, Ind. and on behalf of heirs and beneficiaries of Doris Clark v.*

*ERCOT et al.*; Cause No. 2021CI05130 in the 73rd Dallas County Judicial District Court, Texas,

transferred to Master Cause No. 2021-41903 in the Harris County 281st Judicial District Court, MDL Case No. 5.00037:

a) Doris and her son lived in a mobile home, above ground, which exposed the plumbing to the freezing temperatures as well. Typically, heat from the home would prevent the pipes from freezing but, as a direct result of Doris's inability to heat her home, Doris's pipes froze and burst, depriving them of water in their home. The damage to their pipes was so extensive that water was not restored to the home until April of 2021. Doris had recently been hospitalized for sepsis and was still recovering from her extended illness. She was receiving treatment for that and COPD, which included in home care and physical therapy. Because of her diagnosis, Doris was medically dependent on an oxygen machine to sustain her life. The oxygen machine required electricity to function and did not have back-up battery capability. When the electricity was turned off, the oxygen machine became completely inoperable. On information and belief, Decedent died of heart failure, carbon monoxide poisoning, oxygen deprivation, and/or hypothermia as a direct result of the power outage, which deprived her of electricity in her home.

73.    *Ellaine Cook v. ERCOT et al.*; Cause No. 2021-17271 in the 333rd Judicial District Court of Harris County, Texas, transferred to Master Cause No. 2021-41903 in the Harris County 281st Judicial District Court, MDL Case No. 5.00024:

a) At the residence where Plaintiff was staying, the stove was turned on in order to try and stay warm during the time they were without power. Plaintiff was exposed to significant carbon monoxide levels as a result. To this date, Plaintiff experiences headaches, dizziness, vertigo, confusion, amnesia and memory loss due to the toxic inhalation of carbon monoxide fumes while they attempted to stay warm during the winter storm. As a result of the loss of electricity, Plaintiff also suffered extreme anxiety and emotional distress from the situation. Her physical and mental health have deteriorated as a result, and she has suffered significant personal injury. Once power was restored, her condition has not improved. She has undergone significant medical treatment following, including a visit to the emergency room to treat her ongoing symptoms.

74.    *Toya Cox, Ind. and as the Independent Administrator of the Estate of Michael Wayne Cox*; Cause No. CV21-0220-173 in the 173rd Judicial District Court of Henderson County, Texas, transferred to Master Cause No. 2021-41903 in the Harris County 281st Judicial District Court, MDL Case No. 5.00076:

a) Michael Wayne Cox required breathing equipment to sustain his life. As a direct result of Defendants' conduct, Michael Wayne Cox's home was without power and he wrongfully died as a result.

75. *Debra Craft, Ind. and n/o/k of L.D. Craft v. ERCOT et al.*; Cause No. DC-21-10934, in the 44th Judicial District Court of Dallas County, Texas, transferred to Master Cause No. 2021-41903 in the Harris County 281st Judicial District Court, MDL Case No. 5.00156:

a) Mr. Craft was dependent on an oxygen machine to sustain his life. The oxygen machine required electricity to function and did not have back-up battery capability. When the electricity was turned off, the oxygen machine became completely inoperable. With no alternative source of oxygen, Mr. Craft immediately began struggling to breathe, his body unable to take in enough oxygen to sustain his life. On information and belief, L.D. Craft, Decedent, died of complications resulting from depleted oxygen and exposure to freezing temperatures as a direct result of the power outage, which deprived him of electricity in his home.

76. *Karen Dameron, Ind. a/n/k of Delverna Burks v. ERCOT et al.*; Cause No. 2021-15904 in the 61st Judicial District Court of Harris County, Texas, transferred to Master Cause No. 2021-41903 in the Harris County 281st Judicial District Court, MDL Case No. 5.00019:

a) Delverna was dependent on an oxygen machine to sustain her life. The oxygen machine required electricity to function and did not have back-up battery capability. When the electricity was turned off, the oxygen machine became completely inoperable. With no alternative source of oxygen, Delverna immediately began struggling to breathe, her body unable to take in enough oxygen to sustain her life. On information and belief, Delverna Burks, Decedent, died of oxygen deprivation as a direct result of the power outage, which deprived her of electricity in her home.

77. *Valerie Daniels v. ERCOT et al.*; Cause No. 2021-18513 in the 215th Judicial District Court of Harris County, Texas, transferred to Master Cause No. 2021-41903 in the Harris County 281st Judicial District Court, MDL Case No. 5.00027:

a) As a result of the loss of electricity, Plaintiff suffered extreme anxiety and emotional distress from the situation, in not knowing how long she would be deprived of electrical power that was needed to warm her house.
b) Her physical and mental health has deteriorated as a result, and she has suffered significant personal injury. On Wednesday, February 17, 2021, Plaintiff developed mottled skin on her left thigh down to her shin. On Thursday, her condition was so bad she went to the Emergency Room for treatment. On February 19, 2021, Plaintiff

was diagnosed with livedo reticularis caused by the cold temperature in her house. In the days that have followed, Plaintiff continues to have health problems, as a direct result of the Defendants having taken away her ability to warm her house. Plaintiff experiences numbness and tingling in her left leg and finger-tips. She is in constant pain as a result of the injuries sustained.

78. *Linda Davenport, Ind. and as the personal representative of the estate of Lois Marie Skaggs v. ERCOT et al*.; Cause No. 27093 in the Judicial District Court of Scurry County, Texas, transferred to Master Cause No. 2021-41903 in the Harris County 281st Judicial District Court, MDL Case No. 5.00080:

a) Lois Marie Skaggs required breathing equipment to sustain her life. As a direct result of Defendants' conduct, Lois Marie Skaggs' home was without power and she wrongfully died as a result.

79. *Clara Flores, Ind. a/n/k of Luis Flores v. ERCOT et al*.; Cause No. 2021CI06224 in the 408th Judicial District Court of Bexar County, Texas, transferred to Master Cause No. 2021-41903 in the Harris County 281st Judicial District Court, MDL Case No. 5.00033:

a) Luis was dependent on dialysis multiple times per week to manage a preexisting medical condition. Fresenius Kidney Care was closed between February 15, 2021, and February 19, 2021. On information and belief, the facility was closed because it lost power on February 15, 2021, that power loss was not intermittent, and the power was not restored until February 19, 2021. During this closure, Luis had two dialysis appointments scheduled. He was unable to receive his treatment because the facility was closed and he was unable to receive treatment at any other location because of the weather conditions, temperatures, and various closures of other businesses and treatment facilities. On information and belief, Luis Flores, Decedent, died as a direct result of the power outage which made it impossible for him to receive his life-sustaining dialysis treatments.

80. *Dominique Fisher, Ind. a/n/f of T.H., a minor v. ERCOT et al*.; Cause No. 2021-09695 in the 152nd Judicial District Court of Harris County, Texas, transferred to Master Cause No. 2021-41903 in the Harris County 281st Judicial District Court, MDL Case No. 5.00032:

a) T.H. is a 14 year old female who has been diagnosed with anxiety, bipolar disorder, oppositional defiant disorder, and PTSD. As a result, she has required medical care and treatment. The pharmacy that fills the Minor's prescriptions was closed as a result of a lack of electricity, and the Minor remained without necessary medication

as a result. As a result of the loss of electricity, the Minor suffered extreme anxiety and emotional distress from the situation. The minor began hallucinating, believing that someone was going to kill her while the family attempted to stay warm in their car. During the period of time when the family lacked electricity, the Minor told her mother that she needed to use the restroom, went inside their home, and began cutting herself in the bathroom. Shortly afterwards she attempted to overdose with pain medication, believing that they would not be saved, and the power would never be turned back on. Her physical and mental health has deteriorated as a result, and she has suffered significant personal injury. Plaintiff Dominique Fisher suffered extreme anxiety and panic attacks as a result of the incident and the risk of losing her daughter. She spent her hours trying to soothe her daughter, and when not doing that, hours on the phone calling hospitals, doctors' offices, and her pharmacy in an attempt to obtain the necessary medication.

81. *Floyd Furlow et al. Ind. and as personal rep. of the estate of Velma Furlow v. ERCOT et al.*; Cause No. 2021-16990 in the 157th Judicial District Court of Harris County, Texas, transferred to Master Cause No. 2021-41903 in the Harris County 281st Judicial District Court, MDL Case No. 5.00106:

    a) Decedent's power was out for over nine hours when the temperature in Houston was approximately 16 degrees but lowered throughout the evening to under 10 degrees by the next morning. Upon information and belief, Decedent's pre-existing conditions of heart and kidney disease were exacerbated by hypothermia to the point of death. Decedent's hypothermia was a direct result of the power outage that deprived her of heat in her home.

82. *Joann Garner, Ind. a/n/k of William Garner v. ERCOT et al.*; Cause No. DC-21-03810 in the 298th Judicial District Court of Dallas County, Texas, transferred to Master Cause No. 2021-41903 in the Harris County 281st Judicial District Court, MDL Case No. 5.00025:

    a) William Garner, Decedent, died of hypothermia as a direct result of the power outage, which deprived him of heat in his home.

83. *Maxie Hamby, Ind. a/n/k of Jesse Montoya v. ERCOT et al.*; Cause No. 2021CI09937 in the 27th Judicial District Court of Bexar County, Texas, transferred to Master Cause No. 2021-41903 in the Harris County 281st Judicial District Court, MDL Case No. 5.00084:

a) When Jesse realized the power was off in such cold weather with no access to an alternative heat source to keep his family warm, he began to panic. Jesse asked his family for a lighter or matches to attempt lighting the pilot on the furnace and was heading outside to collect supplies when he began to gasp, clutching his chest, and collapsed just inside the front door. On information and belief, Decedent died as a direct result of the power outage, which deprived him of electricity in his home.

84. *Kelly Heatley, Ind. a/n/k of Patricia Sellers v. ERCOT et al.*; Cause No. DC-21-06337 in the 68th Judicial District Court of Dallas, Texas, transferred to Master Cause No. 2021-41903 in the Harris County 281st Judicial District Court, MDL Case No. 5.00081:

a) Decedent was medically dependent on electrically powered oxygen equipment. As a direct result of Decedent's loss of power Decedent was unable to heat her home or use electrically powered oxygen equipment. Decedent was taken to a local hospital February 15, 2021 and later transferred to Dallas Regional Hospital where she eventually died due to complications of pneumonia and chronic obstructive pulmonary disease exacerbation.

85. *Sharon Howeth, Ind. and as Personal Representative of the Estate of Charles Howeth v. ERCOT et al.*; Cause No. 2021-11543; in the 129th Judicial District Court of Harris County, Texas, transferred to Master Cause No. 2021-41903 in the Harris County 281st Judicial District Court, MDL Case No. 5.00009:

a) At a doctor's appointment on February 8, 2021, his oncologist happily informed him that his treatment was successful, and Charles was not expected to die any time soon from the cancer. Charles was expected to live a quality life going forward. Unfortunately, as a result of the power outages inflicted by the Defendants, Charles lost his life due to the inability to stay warm. Early on Monday, February 15, 2021, Sharon and Charles were plunged into coldness when the electricity at their residence was shut off. On February 18, 2021, the power was restored, but it was too late. Plaintiff suffered extreme anxiety as a result of the incident.

86. *Diane Jamerson, Ind. and on behalf of the Estate of Ollie Driver, Jr. v. ERCOT et al.*; Cause No. 2021-2959-4 in the 170th Judicial District Court of McLennan County, Texas, transferred to Master Cause No. 2021-41903 in the Harris County 281st Judicial District Court, MDL Case No. 5.00164:

a) On information and belief, Decedent died of hypothermia after spending nearly two days in below-freezing temperatures as a direct result of the power outage, which deprived him of electricity in his home.

87. *Brenda Johnson v. ERCOT et al.*; Cause No. 2021-10792; in the 281st Judicial District Court of Harris County, Texas, transferred to Master Cause No. 2021-41903 in the Harris County 281st Judicial District Court, MDL Case No. 5.00006:

a) As a result of her medical condition, Plaintiff requires the use of an oxygen concentrator with a moisturizer to help her breathe, which requires electricity. Unfortunately, as a result of the power outages inflicted by the Defendants, Plaintiff was left without power, and was unable to use her oxygen concentrator to breathe. Her physical and mental health has deteriorated as a result, and she has suffered significant personal injury. Plaintiff suffered extreme anxiety and emotional distress from the situation.

88. *Ambrea Jones at al. v. ERCOT et al.*; Cause No. 2021-10369; in the 157th Judicial District Court of Harris County, Texas, transferred to Master Cause No. 2021-41903 in the Harris County 281st Judicial District Court, MDL Case No. 5.00002:

a) A.J. relies on an electricity powered ventilator machine that helps her lungs remain at the necessary moisture level. Ambrea and Timothy had previously registered their home as a critical care home with their electricity provider. During the hours that she was off her necessary ventilator the minor's condition worsened and A.J. was transferred to the hospital's Pediatric ICU, where she required lengthy inpatient care. Plaintiffs Ambrea and Timothy suffered extreme anxiety and worry as a result of the incident and the risk of losing their daughter.

89. *Kathy & Michael Kamego v. ERCOT et al.*; Cause No. 21DCV326936, in the 169th Judicial District court of Bell County, Texas, transferred to Master Cause No. 2021-41903 in the Harris County 281st Judicial District Court, MDL Case No. 5.00165:

a) Michael Kamego required substantial medical equipment to sustain health and his life. As a direct result of Defendants' conduct, Plaintiffs' home was without power for five days and Michael Kamego sustained serious bodily injury as a result. Furthermore, Plaintiffs' pipes burst, which resulted in extensive damage to Plaintiffs' home and personal property. Kathy Kamego has also been experiencing severe panic attacks since the freeze, as a direct result of Defendants' conduct.

90. *Sulocsana Karki as personal rep. of the estate of Pramod Bhattarai v. ERCOT et al.*; Cause No. 2021-16353 in the 234th Judicial District Court of Harris County, Texas, transferred to Master Cause No. 2021-41903 in the Harris County 281st Judicial District Court, MDL Case No. 5.00020:

  a) Unable to stay warm, faced with the prospect of freezing to death, uncertain of how long the power would be off, and unaware of the danger involved, Mr. Bhattarai brought a charcoal grill into his home. On information and belief, Mr. Bhattarai was not aware of the potential for carbon monoxide poisoning from burning charcoal inside the home. Since carbon monoxide gas is colorless, odorless, and the symptoms of carbon monoxide poisoning (including dizziness, weakness, and confusion) are relatively similar to the symptoms of hypothermia (including drowsiness, exhaustion, and confusion), Mr. Bhattarai remained unaware that his home was filling up with poisonous gas until it was too late. On information and belief, Pramod Bhattarai, Decedent, was forced to resort to desperate, ultimately fatal, measures to keep himself warm as a direct result of the power outage which had deprived him of heat in his home.

91. *Grace Ybarra Landa, a/n/k of Gilbert Rivera v. ERCOT*; Cause No. 2021-10554; in the 165th Judicial District Court of Harris County, Texas, transferred to Master Cause No. 2021-41903 in the Harris County 281st Judicial District Court, MDL Case No. 5.00004:

  a) The morning of Tuesday, February 16, 2021, Gilbert's siblings were so scared for their brother that they decided to brave the roads to check on him. They arrived at Gilbert's home at approximately 11:00 A.M. to find their brother appeared to be sleeping, bundled in layers of clothing and blankets to keep himself warm like he promised. However, as the siblings drew nearer to wake him, they made the horrific realization that their beloved brother was not asleep, but stiff and nonresponsive. Gilbert Rivera had frozen to death during the night. On information and belief, Gilbert died of hypothermia as a direct result of the power outage, which deprived him of heat in his home.

92. *Amanda Lazo, Ind. a/n/k of Dianna Sylvia Lazo v. ERCOT et al.*; Cause No. 21-04-61045-CV in the 79th Judicial District Court of Jim Wells County, Texas, transferred to Master Cause No. 2021-41903 in the Harris County 281st Judicial District Court, MDL Case No. 5.00055:

  a) Diana was dependent on dialysis every other day to manage a preexisting medical condition. Fresenius Kidney Care – Alice was closed between February 15, 2021,

and February 19, 2021. On information and belief, the facility was closed because it lost power on February 15, 2021, that power loss was not intermittent, and the power was not restored until February 19, 2021. Diana was unable to receive her treatments throughout the week because the facility was closed. On Saturday, February 20, 2021, Plaintiff Amanda Lazo was unable to wake her mother. She called paramedics but they were unable to revive her. Diana Lazo was pronounced dead at the scene. On information and belief, Diana Lazo, Decedent, died of complications caused by failure to receive dialysis as scheduled as a direct result of the power outage, which caused the closure of her dialysis treatment facility.

93.     *Danny Martin, Ind. and as Ind. Admin. Of Estate of Anne Louise Martin, Shane Martin, Travis Martin, and Heather Tambrella v. ERCOT et al.*; Cause No. 21-CV-0492 in the Galveston 56th Judicial District Court, Texas, transferred to Master Cause No. 2021-41903 in the Harris County 281st Judicial District Court, MDL Case No. 5.00114:

   a) Anne Louise Martin required breathing equipment to sustain her life. As a direct result of Defendants' conduct, Anne Louise Martin's home in Santa Fe, Texas was without power for over 48 hours and she wrongfully died as a result.

94.     *Marisol Martinez, Ind. and n/o/k of Jose Martinez v. ERCOT et al.*; Cause No. 2021CI16591, in the 285th Judicial District Court of Bexar County, Texas, transferred to Master Cause No. 2021-41903 in the Harris County 281st Judicial District Court, MDL Case No. 5.00154:

   a) Mr. Martinez was dependent on an oxygen machine to sustain his life. The oxygen machine required electricity to function and did not have back-up battery capability. When the electricity was turned off, the oxygen machine became completely inoperable. Mr. Martinez was also dependent on a feeding tube and ostomy bag. Mr. and Mrs. Martinez's' ability to manage these conditions became increasingly difficult once the power was turned off because of inconsistent lighting, freezing temperatures, and lack of water for cleaning and sanitation. On information and belief, Jose Martinez, Decedent, died of respiratory failure as a direct result of the power outage, which deprived him of electricity in his home.

95.     *Mauricio and Daysi Marin v. ERCOT et al.*; Cause No. 2021-09497; in the 270th Judicial District Court of Harris County, Texas, transferred to Master Cause No. 2021-41903 in the Harris County 281st Judicial District Court, MDL Case No. 5.00001:

   a) As a result of the loss of power, and Plaintiff Mauricio's inability to run medical equipment, his life has been threatened. His health condition has deteriorated

further as a result, and he has suffered significant personal injury. Plaintiff Daysi suffered extreme anxiety and panic attacks as a result of the incident and the risk of losing her husband. She spent her hours trying to keep Mauricio warm and breathing so that their children did not witness the dire circumstances of her husband's condition.

96.     *Katheryn McCoy, Ind. and as the personal representative of the estate of Jameson Van McCoy v. ERCOT et al.*; Cause No. 21-0699-C26 in the 26th Judicial District Court of Williamson County, Texas, transferred to Master Cause No. 2021-41903 in the Harris County 281st Judicial District Court, MDL Case No. 5.00079:

   a)   Jameson Van McCoy required breathing equipment to save his life. As a direct result of Defendants' conduct, his home was without power for four days and he wrongfully died as a result.

97.     *Colinda Meza, Ind. and as Representative of the Estate of Connie Richey v. ERCOT et al.*; Cause No. D-1-GN-21-004726, in the 250th Judicial District Court, Texas, transferred to Master Cause No. 2021-41903 in the Harris County 281st Judicial District Court, MDL Case No. 5.00161:

   a)   Unfortunately, the Meza residence—which was serviced by Austin Energy—lost power in the morning hours of Monday, February 15, 2021. However, the power outage did not rotate or roll—and the Mezas were without power until Friday, February 19, 2021. Despite the medical attention provided at the hospital, Mrs. Richey was pronounced dead on Friday, February 19, 2021, after enduring hours of pain uncontrolled by medication. According to Mrs. Richey's official death certificate, her immediate cause of death was "urosepsis complicated by frozen urinary catheter," noting that her fatal injury occurred due to "exposure to extreme cold temperatures during February winter storm 2021."

98.     *Ivet Nazario, Ind. and as personal representative of the Estate of Andres Nazario v. ERCOT et al.*; Cause No. 2021-53294 in the 127th Judicial District Court of Harris County, Texas, , transferred to Master Cause No. 2021-41903 in the Harris County 281st Judicial District Court, MDL Case No. 5.00167:

   a)   Fresenius Kidney Care attempted treatment but was unsuccessful due to Mr. Nazario's inability to breathe and bleeding from the mouth. EMS was called to

transport Mr. Nazario to Memorial Hermann Hospital in Sugar Land, Texas, where he tested negative for COVID but was placed on a ventilator. X-rays found blood in his lungs, and he was given low odds of survival. Mr. Nazario succumbed to his illness three (3) days later. He was frail and in poor health and depended on the electricity to receive his dialysis at the medical facility as he was not set up to do dialysis at his home.

99.     *Paige Parker, Ind. a/n/k of Delbert Owens v. ERCOT et al*.; Cause NO. 2021-29847

in the 61st Judicial District Court of Harris County, Texas, transferred to Master Cause No. 2021-

41903 in the Harris County 281st Judicial District Court, MDL Case No. 5.00085:

   a) On information and belief, Decedent died of hypothermia as a direct result of the power outage, which deprived him of electricity in his home.

100.     *Esther Ramos, Ind. a/n/k of Maria Cisneros v. ERCOT et al*.; Cause No.

2021CI15789, in the 166th Judicial District Court of Bexar County, Texas, transferred to Master

Cause No. 2021-41903 in the Harris County 281st Judicial District Court, MDL Case No. 5.00152:

   a) Ms. Cisneros was dependent on an oxygen machine to sustain her life. The oxygen machine required electricity to function and did not have back-up battery capability. On information and belief, Maria Cisneros, Decedent, died of a respiratory failure as a direct result of the power outage, which deprived her of electricity in her home.

101.     *Lisa Riojas, Ind. a/n/k of Manuel Riojas v. ERCOT et al*.; Cause No. 2021CI05422

in the 407th Judicial District Court of Bexar County, Texas, transferred to Master Cause No. 2021-

41903 in the Harris County 281st Judicial District Court, MDL Case No. 5.00023:

   a) Manuel was dependent on an oxygen machine to sustain his life. The oxygen machine required electricity to function and did not have back-up battery capability. Manuel Riojas passed away on Tuesday, February 16, 2021. On information and belief, Decedent died of oxygen deprivation as a direct result of the power outage, which deprived him of electricity in his home.

102.     *Jesus Rodriguez, Ind. and as rep. of estate of Ann Elizabeth Rodriguez v. ERCOT*

*et al*.; Cause No. 2021-CI-03639 in the 225th Judicial District Court of Bexar County, Texas,

transferred to Master Cause No. 2021-41903 in the Harris County 281st Judicial District Court,

MDL Case No. 5.00051:

a) On information and belief, Ann Elizabeth Rodriguez, Decedent, died of complications resulting from exposure to freezing temperatures as a direct result of the power outage, which deprived her of electricity in her home.

103. *Shea Rodriguez, Ind. and as Representative of the Estate of Michael Kevin Roseberry*; Cause No. 21-CV-1181 in the 405th Judicial District Court of Galveston County, Texas, transferred to Master Cause No. 2021-41903 in the Harris County 281st Judicial District Court, MDL Case No. 5.00153:

a) As a direct result of Defendants' conduct, Michael Kevin Roseberry's home was without power for three days, he suffered hypothermia and internal bleeding, and he wrongfully died as a result.

104. *Susan Sheridan, Ind. and as personal representative of the estate of Charles Raymond Sheridan v. ERCOT et al.*; Cause No. 21-CV-0658 in the 122nd Judicial District Court of Galveston County, Texas, transferred to Master Cause No. 2021-41903 in the Harris County 281st Judicial District Court, MDL Case No. 5.00094:

a) As a direct result of Defendants' conduct, Charles Raymond Sheridan's home was without power for three to four days and he wrongfully died from hypothermia as a result.

105. *Carina Simmons, Ind. a/n/k of Cindy Douglas v. ERCOT et al.*; Cause No. CV21-0213-392 in the 392nd Judicial District Court of Henderson County, Texas, transferred to Master Cause No. 2021-41903 in the Harris County 281st Judicial District Court, MDL Case No. 5.00082:

a) Ms. Douglas was dependent on an oxygen machine to sustain her life. The oxygen machine required electricity to function and did not have back-up battery capability. On information and belief, Cindy Douglas, Decedent, died of oxygen deprivation as a direct result of the power outage, which deprived her of electricity in her home.

106. *James Sustala, Ind. and as the personal representative of the estate of Edwin James Sustala*; Cause No. 2021-29338 in the 190th Judicial District Court of Harris County, Texas, transferred to Master Cause No. 2021-41903 in the Harris County 281st Judicial District Court, MDL Case No. 5.00095:

a) Edwin James Sustala lost electrical services due to ERCOT's failures to plan and prepare for the February 2021 winter storm. The outages lasted several days, and caused Edwin James Sustala's death and caused Plaintiff suffering, hardship, and damages.

107. *Maria Torrez, Ind. and as Personal Rep. of Estate of Eric Torrez v. ERCOT et al.*; Cause No. B210313C in the 119th Judicial District Court of Tom Green County, Texas, transferred to Master Cause No. 2021-41903 in the Harris County 281st Judicial District Court, MDL Case No. 5.00158:

a) Eric Martinez Torrez suffered from kidney failure and required dialysis to sustain his life. As a direct result of Defendants' conduct, Eric Martinez Torrez's home was without power for an extended period of time and he wrongfully died as a result.

108. *Christopher Trujillo, Ind. and as the personal representative of the Estate of Carol Adrienne Hearn v. ERCOT et al.*; Cause No. 153-325285-21 in the 153rd Judicial District court of Tarrant County, Texas, transferred to Master Cause No. 2021-41903 in the Harris County 281st Judicial District Court, MDL Case No. 5.00077:

a) As a direct result of Defendants' conduct, Carol Adrienne Hearn's home was without power for days, and unable to warm herself, she suffered hypothermia and died as a result of Defendants' negligence.

109. *Herlinda Trujillo v. ERCOT at al.*; Cause No. 2021-11566; in the 80th Judicial District Court, Harris County, Texas, transferred to Master Cause No. 2021-41903 in the Harris County 281st Judicial District Court, MDL Case No. 5.00007:

a) Plaintiff was diagnosed with COVID-19 in early February, 2021. After initially being considered asymptomatic from COVID19, she began to experience a worsening of her condition as a result of the loss of electricity. Once power was restored, her condition has not improved. She went to a medical clinic for treatment and was advised to go to the emergency room. In the days that have followed, Plaintiff continues to have difficulty breathing, far worse than she experienced before the Defendants took away her ability to stay warm, as well as numerous other symptoms.

110. *Michelle Williams v. ERCOT et al*.; Cause No. 21DCV326343 in the 169th Judicial

District Court of Bell County, Texas, transferred to Master Cause No. 2021-41903 in the Harris

County 281st Judicial District Court, MDL Case No. 5.00160:

> a) Plaintiff sustained serious bodily injury as a result of Defendants' conduct. Specifically, Plaintiff suffered an asthma attack during the storm, but was unable to use her nebulizer because of the power outage. As a result, Plaintiff was in a coma for over a week, as well as had a heart attack and seizure.

111. *Ron Williams, Ind. and as personal rep. for the Estate of Doris June Williams v.*

*ERCOT et al.*; Cause No. 352-325287-21 in the 352nd Judicial District Court of Tarrant County,

Texas, transferred to Master Cause No. 2021-41903 in the Harris County 281st Judicial District

Court, MDL Case No. 5.00078:

> a) Doris June Williams required breathing equipment to sustain her life. As a direct result of Defendants' conduct, Doris June Williams' home was without power for five days and she wrongfully died as a result.

112. *Glenda Willis, Ind. and A/N/F of James Willis v. ERCOT et al*.; Cause No. 21-CV-

1038 in the 212th Judicial District Court of Galveston County, Texas, transferred to Master Cause

No. 2021-41903 in the Harris County 281st Judicial District Court, MDL Case No. 5.00148:

> a) James Willis required substantial medical equipment to sustain his health and life. As a direct result of Defendants' conduct, Plaintiffs' home was without power for seven days and James Willis sustained serious bodily injury as a result. Furthermore, Plaintiffs' pipes burst and caused Plaintiffs' ceiling to collapse, which resulted in extensive damage to Plaintiffs' home and personal property. The falling ceiling fell on Glenda Willis, causing her serious bodily injury.

113. *Wanda Wright, Ind. and n/o/k Shawn Wright v. ERCOT et al*.; Cause No. DC-21-

10936 in the 134th Judicial District Court of Dallas County, Texas, transferred to Master Cause

No. 2021-41903 in the Harris County 281st Judicial District Court, MDL Case No. 5.00155:

> a) Shawn was dependent on a dialysis machine which had to run up to 15 hours each day to sustain his life. Shawn was also dependent on an oxygen machine to sustain his life. On information and belief, Shawn Wright, Decedent, died of toxic shock

and respiratory failure as a direct result of the power outage, which deprived him of electricity in his home.

114.	*Christy Yarrito-Black, Ind. a/n/k of Christy Black v. ERCOT*; Cause No. DC-21-06324 in the 44th Judicial District Court of Dallas County, Texas, transferred to Master Cause No. 2021-41903 in the Harris County 281st Judicial District Court, MDL Case No. 5.00083:

   a) Fearing for her life and safety, Ms. Black's friend gave her a homemade charcoal heating device. Ms. Black was unaware that she was slowly being poisoned as carbon monoxide cannot be seen and has no smell. She was able to call paramedics and was admitted to the Medical City Denton ER on February 16, 2021, at 8:00 PM. Although medical staff attempted to treat her for the next 41 hours, Christy Black passed away on February 18, 2021, at approximately 1:34 PM with high levels of carbon monoxide in her blood. On information and belief, decedent Christy Black died of carbon monoxide poisoning as a direct result of the power outage, which forced her to utilize an alternative form of heat to avoid freezing to death because she had no electricity in her home.

115.	The following Plaintiffs in the Underlying Lawsuits state the following allegations which do not follow the Master Petition:

116.	*All American Insurance Co. et al. (and Intervenors) v. ERCOT et al.*; Cause No. D-1-GN-21-007413 in the 459th Judicial District Court of Travis County, Texas, transferred to Cause No. 2022-13706 in the Harris County 281st Judicial District Court, MDL No. 5.00178:

   a) ERCOT and the PGCs' unwillingness to accept or adopt any minimum weatherization standards runs contrary to Texas law. The Supreme Court of Texas has long held that, separate from any contractual obligations, a common law remedy exists for an electric company's tortious failure to supply electricity…Similarly, the Texas legislature has affirmed, as a public policy, that the business of generating electricity for the public includes a primary duty to the public to maintain continuous and adequate service…
   b) To the contrary, the 1999 amendment to PURA re-affirmed that ERCOT and the PGCs have a common-law duty to provide reliable electric service to consumers. According to its express terms, consumers of electricity in Texas remain entitled to both "safe" and "reliable" electricity, as well as the "same quality of service" that had previously existed as of December 31, 1999.
   c) Winter Storm Uri was both foreseeable, and actually forecasted, by Defendants well in advance. As early as November 5, 2020, ERCOT's own meteorologist issued a winter outlook forecasting a "very good" chance for an extreme cold weather event during winter 2020/2021.

d) ERCOT's resident meteorologist predicted the specific weather system comprising Winter Storm Uri as early as January 28, 2021, beginning daily communications regarding the potential of a severely cold weather event in mid February, with forecasted temperatures equivalent to those experienced in 2011. On February 4th, ERCOT's meteorologist warned all ERCOT market participants, including the PGC Defendants, that February 12th -14th had the potential to be the coldest period of the winter."

e) A peak demand load of 69,692 megawatts was completely foreseeable. In fact, the ERCOT system had previously experienced similar winter peak demand levels. In January of 2018, demand peak reached 65,915 megawatts. Subsequently, ERCOT forecasted peak load demand growth to increase by approximately 1,000 to 3,000 megawatts each year. A peak demand load of 69,692 megawatts two years later was in line with ERCOT's own forecasts.

f) Although ERCOT and the PGC Defendants could have prepared to meet the peak levels of demand experienced during Winter Storm Uri, ERCOT and the PGC Defendants failed to adequately prepare for the 2020/2021 winter season. In fact, ERCOT and the PGCs planned to fail.

g) By the morning of February 15, 2021, ERCOT began issuing "load shed" orders throughout its system. ERCOT issues a "load shed" order when there is not enough generation capacity on the system to satisfy total demand.

h) In ERCOT's 2020/2021 SARA report (Seasonal Assessment of Resource Adequacy report), a system-wide resource adequacy plan which was reviewed and approved by various PGC members, ERCOT and the PGC Defendants planned to have 82,513 megawatts of total energy resources available to meet the peak demand load for the 2021 winter season. In that report, ERCOT and the PGC Defendants anticipated that "extreme" winter conditions could result in a combined total of 13,953 megawatts of outages58 and an elevated demand load of up to 67,208 megawatts, conditions which would leave the ERCOT system with an operating reserve margin of 1,352 megawatts.

i) In the event that these "extreme" winter conditions occurred, therefore, ERCOT and the PGC Defendants planned to have a total operating reserve capacity of just 1,352 megawatts—an operating reserve so low that it would necessitate a Level 3 Energy Emergency and system-wide blackouts. The failure of the electric grid in response to Winter Storm Uri wasn't an unforeseeable accident, it was the system operating as designed.

j) Further, the report's "extreme" forced outages plan failed to even consider prior extreme weather events, such as what transpired in the winter of 2011. In formulating its "extreme" conditions plan for forced outages, ERCOT and the PGC Defendants did not consider past "extreme" events, but rather, considered conditions from only the last three Texas winters (2017-2018, 2018-2019, 2019-2020). Even worse, ERCOT and the PGC Defendants' failure to consider prior extreme weather events was a calculated decision, given that the ERCOT and the PGC Defendants did choose to consider the winter of 2011 in projecting for increased demand load, but then chose to consider only the last three winters in projecting forced outages.

k) System-wide blackouts were not merely foreseeable, they were ERCOT and the PGC Defendants' designed consequence in the event extreme weather occurred during the winter of 2021, as documented in ERCOT's official SARA report for the 2021 winter season.

l) The Defendants' plan for the 2021 winter season shows that ERCOT and the PGC Defendants were acutely aware of the risks to Plaintiffs' Insureds should the projected extreme weather event occur, yet they persisted in conscious indifference to the rights of Plaintiffs' Insureds.

m) ERCOT, along with the PGC Defendants, should have increased electric production capacity in Texas in the days and weeks leading up to the February 2021 cold weather event, but consciously chose not to do so.

n) This cold weather event and its effects on the Texas energy grid were foreseeable. In fact, the February 2021 event was the fourth such event in the region within the last 10 years. As further noted by regulators, Texas and the Southwest have experienced multiple other disruptive cold weather events, including in 1983, 1989, 2003, 2006, 2008, 2010, and 2011. Similar cold weather events in 1989 and 2011 led to exactly the same type of rolling blackouts that adversely affected Texas residents and businesses in 2021.

o) The same warnings to winterize PGCs were issued again by both NERC and FERC in connection with extreme winter weather events in 2014 and 2018, including the 2014 Polar Vortex report and the South Central United States Cold Weather Bulk Electric System Event of January 17, 2018 report. Nonetheless, Defendants once again ignored these recommendations.

p) During Winter Storm Uri, many of the same PGCs, including but not limited to PGC Defendants Air Liquide, Bastrop, Calpine, Hays, Ingleisde Cogen, Luminant, NRG Texas, Oak Grove, Oxy Vinyls and South Houston, which failed during prior winter weather events, have failed once again to maintain a continuous supply of electricity to Texas due to their refusal to implement the reasonable economical remedies recommended by state and federal agencies, inter alia, in 1989, 2011, 2014, & 2018. At least ninety-six PGCs (16.4%) in ERCOT's system that reported outages or deratings during the winter event in February 2021 also experienced problems during the February 2011 event, while at least eight PGCs experienced outages or de-ratings during each of the three winter emergencies of 1989, 2011, and 2021.

q) Prior to the February 2021 winter storm, ERCOT and the PGC Defendants were well aware that shutting off certain industrial users who operated critical infrastructure for the PGCs fuel supply could cause the loss of generation capacity.

r) Prior to February 15, 2021, Defendants failed to adequately prepare for foreseeable and forewarned weather events, including Winter Storm Uri. As a result, on or about the week of February 15, 2021, Defendants failed to generate sufficient electrical energy to provide reliable power at the properties of Plaintiffs' Insureds, which prevented them from heating their homes and businesses, causing pipes to freeze and burst and water to infiltrate and flood the subject properties. This water intrusion caused extensive damage to both real and personal property owned by Plaintiffs' Insureds, business interruptions, additional living expenses, as well as other expenses related to their respective losses.

s) At all relevant times, ERCOT knew or should have known of the unreasonably dangerous condition created by the lack of preparedness and readiness to confront the winter storm, and it neither eliminated the danger, nor warned Plaintiffs' Insureds and others of the unreasonably dangerous circumstances, which were foreseeable prior to the complained of events.

t) At all relevant times, ERCOT had control of operational planning, load forecasting, securing enough generating capacity to maintain system reliability, assessing the reliability of the generating units within its region—in both normal and abnormal operating conditions, contingency planning, planning for system reserves in the event of higher than anticipated demand and/or lower than anticipated generating supply, and ensuring that adequate supply would be capable of meeting demand during reasonably anticipated conditions.

u) At all relevant times, ERCOT was negligent and breached the duties owed to the Plaintiffs' Insureds. The negligent acts, inactions and/or omissions of this Defendant include, but are not limited to:

1. Failing to prepare for the electric needs of Texans during Winter Storm Uri;
2. Failing to adequately plan and prep weather the ERCOT grid for an "extreme" weather scenario;
3. Failing to perform adequate operational planning and commit resources needed to maintain reliability;
4. Failing to forecast load and resources needed for anticipated conditions in the seven days preceding the week of February 14, 2021;
5. Failing to obtain forecasts of real output capability in advance of the anticipated February 2021 cold weather event;
6. Failing to perform fault studies capable of adequately planning or designing system capacities; and,
7. Failing to adequately assess the electric needs of Texans during Winter Storm Uri.

v) ERCOT's behavior was egregious, unreasonable, and in no way guided by good utility practice. ERCOT's loss of system reliability, and the resulting damages to plaintiffs, were avoidable and would have been prevented had ERCOT acted reasonably or employed good utility practice.

w) At all relevant times, the conditions during the February 2021 winter storm were both reasonably foreseeable and actually anticipated by ERCOT. Days before the onset of the storm, and when ERCOT still had the ability to take reasonable measures that would have prevented a loss of system reliability, ERCOT was warned that such measures were necessary.

x) Defendants' acts and/or omissions rose to the level of gross negligence. The Defendants' conduct as described herein, when viewed objectively from the standpoint of the Defendants, at the time of its occurrence, involved an extreme degree of risk, considering the extreme degree of risk and probability and

magnitude of the potential harm to others and of which the Defendants had actual, subjective awareness of the risk involved. Defendants were aware of the risk of harm to Plaintiffs' Insureds yet exhibited conscious indifference to the rights of Plaintiffs' Insureds, which proximately caused the damages complained of herein.

117. *Alvin Adkison, III Ind. and on behalf of the Estate of Debora Wright v. ERCOT*;

Cause No. D-1-GN-22-000918 in the 419th Judicial District Court of Travis County, Texas:

    a) Unfortunately for Plaintiffs, and literally millions in the state of Texas like them, ERCOT failed to adequately assess the electricity needs of Texas' residents. ERCOT's forecast for the maximum electricity that would be consumed far under-estimated the reality.

    b) Ms. Wright could not have known that ERCOT would cut off the electricity with no end in sight, causing the generator to be worked past its limits, eventually infusing the dwelling with carbon monoxide and killing everyone inside.

    c) ERCOT failed to prepare for the electric needs of the State of Texas during Winter Storm Uri, and failed to adequately assess the electric needs of the State of Texas during Winter Storm Uri.

    d) The Defendants were well aware of the risk of harm to the Plaintiffs yet exhibited conscious indifference to the rights of Plaintiffs, which proximately caused injuries.

118. *Boxer Property Management Corp. v. ERCOT, and DOES I-XX;* Cause No. 2021-

20858 in the 151st Judicial District of Harris County, Texas, transferred to Master Cause No. 2021-

41903 in the Harris County 281st Judicial District Court, MDL Case No. 5.00141:

    a) Defendants and others could have increased electric production capacity in Texas in the days and weeks leading up to the February 2021 cold weather event, but consciously chose not do to so. Similarly, Defendants could have weatherized in updated their generation, transmission, and distribution facilities in order to prevent weather failures like those experienced in February 2021, but consciously chose not do to so.

    b) This cold weather event and its effects on the Texas energy grid were neither unprecedented, nor unexpected, nor unforeseen. Defendants failed to take reasonable care in estimating and planning the amount of power that would be required in the winter 2021 season. Defendants fail to take reasonable corrective actions when it became clear that its own projections showed insufficient supply capacity to meet forecast demand.

    c) Despite knowledge of this extreme risk of harm, Defendants persisted in performing the acts and omissions described herein with a conscious indifference to and reckless disregard of to the rights, safety, or welfare of others.

    d) Defendants' imprudent acts and omissions included, but were not limited to: Failing to warn of a known hazard; Failing to provide adequate notice of a known hazard; Failing to maintain procedures and policies to protect against a known hazard;

Failing to properly guard against winter storms; Providing inaccurate and incomplete advice and information to customers; Failing to recognize and remediate hazards; Participating in and contributing to acts that caused the incident in question; Failing to provide timely assistance, or to ensure other protections were in place; Failing to read, understand, and follow published industry practices, policies and procedures; Promulgating and following unsafe policies and procedures for winter storms; Creating latent dangers, ailing to warn of same; Failing to provide adequate equipment and competent personnel to operate that equipment; Failing to ensure customers were informed that they would be without power and warmth for several days; and Failure to follow its own Protocols with respect to pricing and failure to correct pricing errors in accordance with its own Protocols.

e) On information and belief, Plaintiff is not seeking or demanding damages related to any claim for bodily injury or property damage.

119. *Brazos Electric Power Cooperative, Inc. v. ERCOT*, Chapter 11 Bankruptcy in the

U.S. Bankruptcy Court for the Southern District of Texas, Houston Division, Case No. 21-30725

(DRJ):

a) The ERCOT proof of claim should be disallowed, in part, and materially reduced in amount, because: (1) ERCOT seeks to collect an improper amount from the Debtor by ignoring or otherwise failing to follow the parties' contract and its own protocols; (2) ERCOT failed to mitigate its damages as required under the contract and applicable Texas law governing the relationship between the Debtor and ERCOT; (3) the Debtor was not in default prior to the Petition Date due to, among other things, a force majeure event within the meaning of the Debtor's contract with ERCOT; and (4) the ERCOT charges are excessive.

b) Additionally, the exorbitant and excessive ERCOT charges were avoidable and constructively fraudulent obligations, thereby necessitating a significant reduction of the ERCOT Claim.

c) Lastly, the ERCOT Claim does not meet the requirements for priority under Bankruptcy Code section 503(b)(9) and must be reclassified as a general unsecured claim in its entirety.

d) On information and belief, Plaintiff is not seeking or demanding damages related to any claim for bodily injury or property damage.

120. *In re: Entrust Energy, Inc. et al.; Anna Phillips, as trustee of the Entrust*

*Liquidating Trust, Plaintiff v. ERCOT*; Case No. 21-31070 (MI) – in the US Bky Court for the

Southern District of Texas – Houston Division, Chapter 11:

a) The ERCOT Claim should be disallowed, in part, and the amount of the ERCOT Claim should be significantly reduced, because: (1) the amount of the ERCOT

Claim is contrary to the parties' contract and ERCOT's own protocols; (2) ERCOT failed to mitigate its damages as required under the parties' contract and applicable Texas law; and (3) the Debtors (as defined below) were not in default prior to the Petition Date (as defined below) due to, among other things, a force majeure event, as defined in the parties' contract.

b) Additionally, the exorbitant and excessive ERCOT charges were avoidable and constructively fraudulent obligations and require a significant reduction of the ERCOT Claim.

c) Further, ERCOT has caused the Debtors to sustain damages, including by inverse condemnation, violation of due process under the U.S. Constitution and the Texas Constitution, tortious interference with prospective business relations, negligence, gross negligence, and negligence per se.

d) Based on information presented by ERCOT on February 25, 2021, load shed dropped to 0 MW by midnight on February 18, 2021, but ERCOT continued to set prices administratively at $9,000/MWh until 9:00 a.m. on February 19, 2021. Thus, ERCOT left the HCAP in place for 33 hours after firm load shed had ceased.

e) ERCOT further failed to take reasonable corrective action when it became clear that its own projections showed insufficient capacity to meet forecast demand.

f) ERCOT's acts also constitute gross negligence. ERCOT's acts and omissions, when viewed objectively at the time of their occurrence, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others, and ERCOT had actual, subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others.

g) On information and belief, Plaintiffs are not seeking or demanding damages related to any claim for bodily injury or property damage.

121. *Yoder Ford, Inc., Hacienda Ventures, Inc., LRL, LLC, Lexington Circle, LLC, Yoder Twims, LLC, and Jennifer and William Yoder v. ERCOT et al.*; Cause No. CL-21-1608-I; in the County Court at Law Hidalgo County, Texas, tagged into Master Cause No. 2021-41903 in the Harris County 281st Judicial District Court, MDL Case No. 5.00143:

a) Weather forecasters predicted the inclement weather as early as February 5, 2021, giving power grid operators, energy companies, and state officials ample time to prepare.

b) Defendants ERCOT, AEP, AEP Texas, and others could have increased electric production capacity in Texas in the days and weeks leading up to the February 2021 cold weather event, but consciously chose not to do so.

c) This cold weather event and its effects on the Texas energy grid were neither unprecedented, nor unexpected, nor unforeseen. In fact, similar cold weather events in 1989 and 2011 led to exactly the same type of rolling blackouts that have affected and continue to affect Texas residents and businesses. Texas also experienced disruptive cold weather events in 1983, 2003, 2006, 2008, and 2010.

d) Defendant ERCOT failed to take reasonable care in estimating and planning the amount of power that would be required in the Winter 2021 season. Defendant ERCOT failed to take reasonable corrective actions when it became clear that its own projections showed insufficient supply capacity to meet forecast demand. Defendant ERCOT failed to facilitate a competitive wholesale marketplace that would have provided for enough electricity for Texas at reasonable, accessible prices.

e) On information and belief, Plaintiffs are not seeking or demanding damages related to any claim for bodily injury or property damage.

122. *Adam Garcia et al. Ind. and as Representative of the Estate of Adam Garcia v. ERCOT et al.*; Cause No. 22-03-27591-CV in the 454th Judicial District Court of Medina County, Texas:

a) The cold weather event caused increased energy demands across the State of Texas, and Texans tried to keep their homes and businesses warm with total state energy demand peaking around 69,000 megawatts. A peak winter demand of 69,000 megawatts is by no means unusual.

b) Defendant ERCOT and Defendant MEDINA ELECTRIC COOPERATIVE, INC. could have increased electric production capacity in Texas in the days and weeks leading up to the February 2021 cold weather event, but consciously chose not to do so.

c) This cold weather event and its effects on the Texas energy grid were neither unprecedented, nor unexpected, nor unforeseen. In fact, similar cold weather events in 1989 and 2011 led to exactly the same type of rolling blackouts that have affected and continue to affect Texas residents and businesses. Texas also experienced disruptive cold weather events in 1983, 2003, 2006, 2008 and 2010.

d) On information and belief, it is believed that Adam Joshua Garcia died during the night from hypothermia as a direct result of the power outage and thus when Adam's home caught fire, neither Adam nor his animals were able to leave the home.

e) Defendant ERCOT failed to take reasonable care in estimating and planning the amount of power that would be required in the Winter 2021 season. Defendant ERCOT failed to take reasonable corrective actions when it became clear that its own projections showed insufficient supply capacity to meet forecast demand.

f) Despite knowledge of this extreme risk of harm, Defendant ERCOT persisted in performing the acts and omissions described herein with a conscious indifference to and reckless disregard of the rights, safety, or welfare of others.

123. *Gexa Energy, LP v. AV Beacon LLC, v. ERCOT et al.*; Cause No. 2021-52799 in the 127th Judicial District Court of Harris County, Texas:

a) In this lawsuit, Gexa is seeking $378,940.40 from AV Beacon for allegedly providing electricity to AV Beacon for the Bella Terra Apartments however, Gexa, ERCOT, and Oncor failed to provide electricity to AV Beacon for the Bella Terra Apartments from February 15, 2021 until February 19, 2021 during the freezing temperature of Winter Storm Uri. Because there was no electricity, the heating system at the Bella Terra Apartments did not work, which endangered and inconvenienced the residents of the Bella Terra Apartments, and caused numerous pipes to burst, resulting in water and property damage. It is unconscionable for Gexa, ERCOT, and Oncor to be rewarded with exorbitant payments—in fact, experts have calculated that ERCOT received at least a $16 billion windfall through its wrongful actions'—when they failed to provide electricity and caused damage to AV Beacon.

b) Winter Storm Uri of 2021 was severe, but it was not without precedent.

c) Despite the detailed analyses of the disastrous 1989 and 2011 cold weather events, in 2021 Texans were once again plunged into prolonged power outages, rolling blackouts, and astronomically high electricity bills because the operator and manager of the Texas power grid (ERCOT), transmission and distribution utilities (TDUs) (such as Oncor), and retail electricity providers (REPs) (such as Gexa) failed to prepare adequately for Winter Storm Uri. Clearly, the Texas energy industry failed to address the winter weatherization issues that occurred previously.

d) Further, as a direct and proximate cause of their failing to provide electricity to AV Beacon, numerous pipes burst resulting in water and property damage at the Bella Terra Apartments.

e) ERCOT had a duty to take reasonable care in planning, estimating, and projecting the amount of power that would be required for the 2020-2021 Winter season.

f) ERCOT had a duty to take reasonable actions when it knew that its projections and estimates indicated the supply of power would be unable to meet the demand for power.

g) ERCOT had a duty to require that reasonable corrective actions were taken to prevent cold-weather failures in generation, transmission, and distribution facilities.

h) ERCOT failed to prepare for the electric needs of the State of Texas during Winter Storm Uri, including without limitation failing to take reasonable care in planning, estimating, and projecting the amount of power that would be required for the 2020-2121 Winter season and failing to require that reasonable corrective actions were taken to prevent cold-weather failures in generation, transmission, and distribution facilities, and failed to adequately assess the electric needs of the State of Texas during Winter Storm Uri, including without limitation failing to take reasonable actions when it knew that its own projections and estimates indicated the supply of power would be unable to meet the demand for power.

124. *Just Energy Group, Inc. et al. (Debtors in Foreign Proceeding) v. Just Energy Texas LP, et al. v. ERCOT and the Public Utility Commission of Texas, Inc.*; Cause No. 21-30823

(MI) in the United States Bankruptcy Court for the Southern District of Texas, Houston Division

– Chapter 15:

a) ERCOT's actions found no support under, and were inconsistent with its Standard Form Market Participant Agreement with each Plaintiff (collectively, the "SFA**"),** which incorporates by reference, and requires compliance with ERCOT's nodal protocols. At the time of the storm, the ERCOT Protocols did not include firm load shed among the considerations relevant to determining whether scarcity pricing would be appropriate. Yet, the PUCT and ERCOT impermissibly set the HCAP at $9,000/MWh based on firm load shed; charged prices for ancillary services that exceeded the HCAP of $9,000/MWh; and failed to allow prices to fall below $9,000/MWh when firm load shed ended.

b) What is more, ERCOT left that price in place for 32 hours after it had rescinded all load shed instructions early in the morning of February 18—even though during that period, the asserted justification for the price intervention no longer applied. After ordinary market forces were permitted to take over at 9:00 a.m. on February 19, the price per MWh dropped precipitously.

c) Just Energy paid ERCOT with a full reservation of rights as recognized by this Court. Regardless of whether ERCOT was paid the $335 million it invoiced for the week of February 13 through February 20, ERCOT's "claim" has not been finalized, and certain of those transfers remain subject to challenge. Specifically, Plaintiffs challenge no less than $274 million (hereinafter, the "Transfers") out of the $335 million that ERCOT invoiced.

d) Plaintiffs bring claims against the PUCT and ERCOT under sections 502(b), 502(d), 542(a), 549, 553 and/or 558 of the Bankruptcy Code as well as claims for avoidance under Canadian and any other applicable law. ERCOT incorrectly calculated ancillary charges.

e) Indeed, in its March 1 letter to the PUCT the IMM confirmed that the manner in which the ancillary service charges were calculated and assessed does not conform to past practice and noted that capping ancillary services prices at the system-wide offer cap would be more consistent with economic market design principles.

f) In total, the Transfers consist of payments made by Just Energy (and in the case of Hudson, BP) to ERCOT of no less than $274 million relating to both the imposition of a system-wide offer cap of $9,000/MWh and ancillary charges in response to invoices that Plaintiffs received relating to the week of February 13 through February 20.

g) On information and belief, Plaintiffs are not seeking or demanding damages related to any claim for bodily injury or property damage.

125. *David K. Hughes, Jr. v. ERCOT et al*.; Cause No. 2022-08093 in the 165th Judicial District Court of Harris County, Texas, tagged into Master Cause No. 2021-41903 in the Harris County 281st Judicial District Court, MDL Case No. 5.00179:

   a) Unfortunately for Plaintiff, and literally millions in the state of Texas, ERCOT failed to adequately assess the electricity needs of Texas' residents. ERCOT's forecast for the maximum electricity that would be consumed far under-estimated the reality. All of this occurred despite ERCOT's own representations and assurances in its "Seasonal Assessment of Resource Adequacy" report to the public that it was prepared for such an event.

   b) Despite knowing the severe storm was approaching Texas, Defendants failed to take the necessary steps to ensure that the electric grid would remain stable and viable. As the cold weather event developed, the energy demand peaked at or around 69,000 megawatts. Per ERCOT's own documents, as recently as 2018, ERCOT had experienced a winter demand of 65,915 megawatts and projected that for the 2020-21 winter nearly "83,000 MW of resource capacity is expected to be available for the winter peak."

   c) Defendants ERCOT and CenterPoint were aware or should have been aware of the increased risk Winter Storm Uri would bring to the electric grid. Instead of increasing or ensuring the stability of the supply of power, Defendants consciously failed to take proper action to prepare for such a storm.

   d) Tellingly, Texas has experienced multiple cold weather events like Winter Storm Uri and this scenario was predicted and warned about multiple times. For example, Texas experienced a similar storm to the 2021 storm in 1989. Texas again experienced a similar storm in 2011.

   e) Defendants' failures led to the power failure events of February 2021 and neither ERCOT nor CenterPoint can claim such an event was unforeseeable.

   f) Plaintiff tried to withstand the bitter cold conditions inside his home for days, hoping the electricity would be restored at any moment. Unfortunately, however, on or about February 18, 2021, his life changed forever. Plaintiff collapsed in his home and was later found unconscious and suffering the effects of hypothermia. A friend stopped by and found him. He was taken by ambulance to St. Joseph's Hospital where he coded in the emergency room, but was revived. Plaintiff spent a month or so in the intensive care unit, another month in long term rehabilitation, then rehab. He coded two more times while under observation. He was ultimately discharged to assisted living in May. Plaintiff suffers from encephalopathy and requires assisted living.

126. *David Van Pham and Mai Bui v. ERCOT et al*.; Cause No. 2022-9660 in the Harris County 61st Judicial District Court, Texas, tagged into Master Cause No. 2021-41903 in the Harris County 281st Judicial District Court, TAGGED into MDL Case No. 5.00183:

a) During Winter Storm Uri, because of Defendants' conscious and callous lack of preparation over the course of many years, Plaintiffs suffered injuries and great loss. Plaintiff Pham lost his mother. All of this occurred despite ERCOT's own representations and assurances in its "Seasonal Assessment of Resource Adequacy" report to the public that it was prepared for such an event.

b) Despite knowing the severe storm was approaching Texas, Defendants failed to take the necessary steps to ensure that the electric grid would remain stable and viable. As the cold weather event developed, the energy demand peaked at or around 69,000 megawatts. Per ERCOT's own documents, as recently as 2018, ERCOT had experienced a winter demand of 65,915 megawatts and projected that for the 2020-21 winter nearly "83,000 MW of resource capacity is expected to be available for the winter peak.

c) Defendants' ERCOT and CenterPoint were aware or should have been aware of the increased risk Winter Storm Uri would bring to the electric grid given that the storm was reported by local and national media outlet for well over a week before its arrival. Instead of increasing or ensuring the stability of the supply of power, Defendants consciously failed to take proper action to prepare for such a storm.

d) Tellingly, Texas has experienced multiple cold weather events like Winter Storm Uri and this scenario was predicted and warned about multiple times. For example, Texas experienced a similar storm to the 2021 storm in 1989. Texas again experienced a similar storm in 2011. As made clear by local, state, and national legislators, Defendants' failures led to the power failure events of February 2021 and neither ERCOT nor CenterPoint can claim such an event was unforeseeable.

e) Defendant ERCOT failed to take reasonable care in planning, estimating, and projecting the amount of power that would be required for the 2021 Winter season. Defendant ERCOT failed to take reasonable actions when it knew that its own projections and estimates indicated that supply of power would be unable to meet the forecasted demand. Defendant's conduct was so devoid of care as to establish that ERCOT's acts and omissions were the result of conscious indifference to the rights, welfare, or safety of the person affected by it, including Plaintiffs. This conduct evidenced more than an error of judgement, inadvertence, or thoughtlessness.

127. *Jose M. Ramirez et al. Ind. a/n/f of R.R., Conception Rangel, et al. v. ERCOT et al.*; Cause No. 2022-DCL-01528 in the 404th Judicial District Court of Cameron County, Texas:

a) Despite it being widely broadcasted that severe winter weather was approaching Texas, Defendants failed to take the necessary steps to ensure that the electric grid would remain stable and viable. As temperatures dropped across Texas, the state-wide energy demand peaked at around 69,000 megawatts. This level of energy demand is not unprecedented in Texas.

b) Defendants ERCOT, CPL, Ambit and Magic Valley failed to use reasonable care to prepare for the increased risk Winter Storm Uri would bring to the electric grid.

Instead of increasing or ensuring the stability of the supply of power, Defendants failed to take proper action to prepare for such a storm. Defendants should have identified the unmaintained, outdated, and under-inspected power generators and transmission facilities to avoid failures in the event of cold weather. Specifically, similar cold weather events in 1989 and 2011 led to the same type of rolling blackouts that followed Winter Storm Uri.

c) Defendant ERCOT failed to take reasonable care in estimating and planning the amount of power that would be required in the Winter 2021 season. Defendant ERCOT failed to take reasonable corrective actions when it became clear that its own projections showed insufficient supply capacity to meet forecast demand.

d) Defendants' failures ultimately caused the destruction of Plaintiffs home, personal property, and car. Pleading further, Plaintiffs bring claims against Defendant ERCOT for gross negligence.

128. *Marco Romero Ind. a/n/f of M.J., a minor et al. v ERCOT et al.*; Cause No. 202202276 in the 125th Judicial District Court of Harris County, Texas:

a) Before the events in this suit occurred, the Defendants were well aware that the production of electricity in Texas were seriously lacking, and that special measures were needed to provide energy and to communicate to certain customers the duration of power outages.

b) As the events in 2021 would show, ERCOT willfully disregarded its own suggestions and those of renowned experts. While the cold weather event was unusual, it was entirely foreseeable.

c) The freeze caused increased energy demands across Texas as Texans tried to keep their homes warm, with total state energy demand peaking around 69,000 megawatts, which was foreseeable reasonably enough in advance to prevent the unmet energy demand that resulted, since the Texas energy grid regularly meets summer demands of 125,000 megawatts during the summer months. All in all, the defendants knew or should have known of the catastrophe that would be unleashed by their conduct.

d) Maricarmen died on around February 17, 2021. Plaintiffs took steps to mitigate the lack of energy by using a generator. However, the generator failed, and due to the lack of power to their home and the lack of communication related to the length of the outage, Maricarmen died.

e) If ERCOT had not shed load when it did, or if ERCOT had heeded the recommendations in the 2011 report, or if ERCOT had understood that the amount of load shed it required would cause continuous blackouts in the same area, that is if ERCOT would have "talked to people," Maricarmen would still be alive today.

f) ERCOT had a duty to administer, on a daily basis, the operational and market functions of the ERCOT system, including procuring and deploying ancillary services, scheduling resources and loads, and managing transmission congestion, as set forth in this chapter, commission orders, and ERCOT rules; to maintain the

reliability and security of the ERCOT region's electrical network, including the instantaneous balancing of ERCOT generation and load and monitoring the adequacy of resources to meet demand; to coordinate and schedule planned transmission facility outages; and to disseminate information relating to market operations, market prices, and the availability of services, in accordance with this chapter, commission orders, and the ERCOT rules; and breached those duties.

129. *Courtney Sublett, Ind., on behalf of Estate of Jordan Palacios v. ERCOT*; Cause

No. D-1-GN-22-000917 in the 353rd Judicial District Court of Travis County, Texas:

    a) ERCOT failed to adequately assess the electricity needs of Texas' residents. ERCOT's forecast for the maximum electricity that would be consumed far under-estimated the reality.

    b) Courtney Sublett's home electricity was shut off in the early hours of the storm, so she and her infant son Jordan took refuge at a nearby hotel. But then the hotel's power was gone, too, and Courtney was not able to effectively keep Jordan warm. As a result of the negligence of Defendant, Jordan Palacios died, and the Plaintiff suffered damages.

    c) ERCOT failed to prepare for the electric needs of the State of Texas during Winter Storm Uri and failed to adequately assess the electric needs of the State of Texas during Winter Storm Uri.

    d) The Defendants were well aware of the risk of harm to the Plaintiffs yet exhibited conscious indifference to the rights of Plaintiffs, which proximately caused the injuries complained of herein.

130. *T.M. Mian & Associates, Inc. v. ERCOT et al.*; Cause No. CC-21-03507-C in the

Dallas County Court at Law No. 3, Dallas County, Texas:

    a) During the Great Freeze of February 2021 and alleged energy crisis, ERCOT set the energy price rate at the high offer cap (HCAP) of $9,000/MWh when there was load shedding (i.e., imposition of controlled customer outages to reduce the consumer demand for electricity) on the grid. Even after the load shed was rescinded, ERCOT failed to remove the $9,000/MW71 rate and kept prices at that rate for an additional 33 hours. Constellation (an energy provider) allegedly purchased energy at the inflated rate; and Constellation passed their allegedly exorbitant charges onto their customer (the consumer, Mian). As a result of ERCOT's failures and Constellation's exorbitant charges, Mian's electricity bill from Constellation for that one month allegedly increased from approximately $10,000 - $30,000 to over $1.5 Million — up to a ISO-times increase.

    b) Plaintiff sues the Defendants, jointly and/or severally, for the following causes of action: breach of contract, fraud (in all its forms: affirmative, concealment, inducement, etc.), Violations of the Texas Administrative Code, Violations of the Texas Deceptive Trade Practices Act, violations of the Texas Government Code,

promissory estoppel, negligence, conspiracy, unjust enrichment, and Declaratory Judgment.

c) Defendants' conduct was grossly negligent, intentional, willful, wanton, malicious and/or done recklessly, done with malice, and done with disregard for the rights of Plaintiff.

d) On information and belief, T.M. Mian & Associates, Inc. is not seeking or demanding damages related to any claim for bodily injury or property damage.

131. *Andrea Washington, Ind. and on behalf of the Estate of Harvey Louis Smith, Jr. v. ERCOT et al.*; Cause No. 2022-12877 in the 127th Judicial District Court of Harris County, Texas, MDL Case No. 5.00185:

a) ERCOT failed in its duties to prepare for Winter Storm Uri and, as a result, millions of Texas households, including Decedent, lost power with no minimal warning and were plunged into darkness and below freezing temperatures for days. All of this occurred despite ERCOT's own representations and assurances in its November 5, 2020 "Seasonal Assessment of Resource Adequacy" report to the public that it was prepared for such an event.

b) Despite knowing the severity of the storm and that it was approaching Texas, Defendants failed to take the necessary steps to ensure that the electric grid would remain stable and viable. As the cold weather event developed, the energy demand peaked at around 69,000 megawatts. Per ERCOT's own documents, as recently as 2018, ERCOT had experienced a winter demand of 65,915 megawatts and projected in its November 5, 2020 released report that for the 2020-21 winter nearly "83,000 MW of resource capacity is expected to be available for the winter peak."

c) Texas has experienced multiple cold weather events in the past similar to Winter Storm Uri. This scenario was predicted and warned about multiple times. For example, in 1989, Texas experienced a similar storm to Winter Storm Uri. Texas again experienced a similar storm in 2011. As a direct result of Defendants' conduct, Decedent, Harvey Louis Smith, Jr., froze to death.

d) Defendant ERCOT failed to exercise and take the reasonable degree of care in the planning, estimating, and projecting the amount of power that would be required for the 2021 Winter season. Defendant ERCOT failed to take reasonable actions when it knew that its own projections and estimates indicated that the supply of power was insufficient to meet the forecasted demand.

e) Despite knowledge of this extreme risk of harm, Defendant ERCOT persisted in the acts and omissions with a conscious indifference to and reckless disregard to the rights, safety, or welfare of others. Defendant ERCOT's conduct was so devoid of care as to establish that ERCOT's acts and omissions were the result of conscious indifference to the rights, welfare, or safety of the person affected by it, including Decedent. This conduct evidenced more than an error of judgment, inadvertence, or thoughtlessness.

132.   Complaint Of Engie Energy Marketing NA, Inc. ("Engie") and Viridity Energy

Solutions, Inc. ("Viridity") Against ERCOT before the Public Utility Commission:

    a) ENGIE and Viridity request that the Commission direct ERCOT to credit the RRS services ERCOT requested and utilized, that were deployed during Winter Storm Uri and the EEA3 event that followed, and reverse any charges assessed against ENGIE for phantom RRS that ERCOT did not acquire.

    b) Viridity and BASA complied with ERCOT's Deployment Instruction and eliminated the Load Resources' loads taking them offline. The Load Resources remained deployed and offline for the remainder of the EEA3 event as required by ERCOT's repeated Dispatch Instruction and ERCOT Protocols. However, ERCOT did not credit ENGIE, Viridity or BASA for the RRS service provided pursuant to ERCOT's Dispatch Instruction for the February 16 to 19 Operating Days.

    c) Complainants submit this complaint and appeal of ERCOT's actions so that the RRS that was actually provided to ERCOT may be properly accounted for as required by PURA.13 Specifically, the parties request that (1) Viridity be paid for the 78 MW of RR S services provided to ERCOT throughout the extended deployment; and (2) ERCOT recognize 27 MW of ENGIE's self-arranged RRS service that Viridity and BASA provided to ENGIE and ERCOT. ENGIE also requests that the Commission reverse both ERCOT's failure to pay and the additional charges to ENGIE for replacement RRS that was never acquired. The end result of any requested action is that ENGIE, BASA, and Viridity are left unharmed for the RR S provided, including the RR S that was self-scheduled and provided for the reliability of the ERCOT market.

    d) On information and belief, Engie and Viridity are not seeking or demanding damages related to any claim for bodily injury or property damage.

133.   Priority Power Management LLC Complaint and Appeal of the Decisions of

ERCOT filed with the Public Utility Commission of Texas:

    a) On February 15, 2021, PPM received a curtailment instruction to PPM's Qualified Scheduling Entity (QSE) for a Responsive Reserve ("RRS") deployment due to the emergency presented to the ERCOT system as a result of Uri. PPM continued its RRS deployment for the next several days. It wasn't until February 18, 2021 around 10:00am that PPM was advised by ERCOT that Load Resources without obligations that were deployed on February 15th could restore load.

    b) However, just a few hours later, ERCOT rescinded its directive that Load Resources deployed on February 15th could restore load and instead directed that they should remain shut down. By this time, however, PPM had already started efforts to restore load, which it had to quickly reverse when ERCOT changed its instructions. Because the Load Resources had been deployed to provide RRS, PPM incurred Ancillary Service imbalance charges for the intervals during which the Load Resources were deployed on February 15-19, 2021. This resulted in ERCOT

assessing PPM $6,209,668.19 in RTASIAMT charges and $59,879,475.76 in RTRDASIAMT charges. Pursuant to § 9.14 of the ERCOT Protocols, PPM submitted Settlement and Billing Disputes for these RTASIAMNT charges and RTRDASIAMT charges2 for February 15-19, 2021.

c) PPM contends that charges assessed by ERCOT after the Maximum Deployment time stipulated in the Load Resource Asset Registration Form ("RARF") were improper because PPM provided to ERCOT the load resources that ERCOT deployed throughout Uri.

d) As a result of ERCOT' s decision in the ADR proceedings, PPM seeks relief from the Commission to rescind certain ancillary services imbalance charges assessed by ERCOT as a result of the February 2021 severe winter weather event, Uri. The charges assessed by ERCOT should be calculated in accordance with the ERCOT Protocols and Commission rules in effect during Uri, an EEA3 emergency event. These do not allow ERCOT to assess ancillary service imbalance charges for intervals occurring after a resource deployment has exceeded the Load Resources' maximum deployment time while it remains deployed.

e) On information and belief, Priority Power Management LLC is not seeking or demanding damages related to any claim for bodily injury or property damage.

134. Civil Investigative Demand from the Texas Office of the Attorney General,

Consumer Protection Division:

a) Pursuant to the Texas Attorney General's specific authority under article IV, section 22 of the Texas Constitution and section 17.61 of the Texas Deceptive Trade Practices – Consumer Protection Act, sections 17.41-.63, Texas Business and Commerce Code ("DTPA"), Electric Reliability Council of Texas, Inc. was directed to produce documents pertaining to the February 2021 cold weather event. On information and belief, no lawsuit has been filed in connection to this investigative demand against ERCOT.

135. Texas Reliability Entity, Inc. Notice to Preserve Documentation – Data Hold

Regarding Extreme Cold Weather Event During February 2021:

a) On February 17, 2021, The Texas Reliability Entity, Inc. ("Texas RE") sent a confidential Notice to Preserve Documentation related to *Winter Storm Uri*, including: Operational communication, including operator logs, recorded voice communications, and e-mails and other forms of communication to or from operations staff that may be directly or indirectly related or relevant to the Event; System operational data, outage reporting and scheduling, fuel surveys, entity operating plans and related material and; Study cases and results from on-line or off-line contingency analysis or stability analysis.

b) On information and belief no lawsuit has been filed in connection with notice to preserve documentation, and Texas RE is not seeking or demanding damages related to any claim for bodily injury or property damage.

## NO COVERAGE FOR THE CLAIMS

136.    Cincinnati has no obligation under the Policy to defend or indemnify ERCOT in connection with the Underlying Matters, including the Underlying Lawsuits.

137.    There is no duty to defend or indemnify the Underlying Matters because there is no occurrence. In order for there to be an occurrence, there must be an accident. An accident is a fortuitous, unexpected, and unintended event.

138.    None of the allegations in the Underlying Lawsuits assert that the alleged damages were caused by any accident. In fact, each asserts facts to the contrary. The allegations in the Underlying Lawsuits allege ERCOT either knew, should have known, expected, and/or intended, that *Winter Storm Uri* would cause the same power outages which occurred as a result of previous storms in Texas, including storms in 1989 and 2011.

139.    The Underlying Lawsuits allege the power outages caused by *Winter Storm Uri* were a result of the exact same failures including failures of the same generators which failed in the previous winter storms, and therefore, the power outages were foreseeable, expected, and/or intended.

140.    The damages alleged in the Underlying Lawsuits were not caused by an accident, and the Claims do not satisfy the Policy's insuring agreement for Bodily Injury or Property Damage Coverages.

141.    In addition and/or in the alternative, coverage is precluded by the exclusion for Expected or Intended Injury.

142.    In addition and/or in the alternative, coverage is precluded by the exclusion for Contractual Liability.

143.     In addition and/or in the alternative, coverage is precluded by the Policy's exclusion for Testing or Consulting Errors and Omissions.

144.     In addition and/or in the alternative, coverage is precluded under the Policy by the Failure to Supply Exclusion.

145.     In addition, any claim which does not allege damages for bodily injury or property damage is not covered.

146.     On information and belief, there may be additional underlying claims or suits against ERCOT resulting from the power outages due to *Winter Storm Uri* for which no notice has been given to Cincinnati. To the extent there are additional underlying matters, it is Cincinnati's intention that they be included in and addressed by this complaint. To the extent that any such additional underlying matters arise, Cincinnati will seek to amend this complaint to add them.

147.     There is no provision, term, or condition of the Policy that provides coverage to ERCOT for the claims set forth in the Underlying Matters which make the basis of this declaratory judgment action.

148.     Because ERCOT seeks coverage for the Underlying Matters, and Cincinnati denies a duty to defend and/or indemnify them, there exists an actual controversy of a justiciable nature between Cincinnati and ERCOT concerning the rights and obligations of the parties to the insurance contract.

149.     Cincinnati has complied with all terms, conditions and provisions of the insurance Policy and specifically reserves any and all rights and defenses it has or may have under the Policy, including additional rights and defenses that may become apparent throughout the course of discovery in this case.

150.    By virtue of the foregoing, a declaratory judgment is both necessary and proper in order to set forth and determine the rights, obligations, and liabilities that exist between the parties in connection to the aforementioned Policy.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, The Cincinnati Insurance Company, prays that this Court enter judgment in its favor and against Defendant ERCOT declaring:

A.    That it has no duty to defend ERCOT with respect to the Underlying Matters including the Underlying Lawsuits;

B.    That it has no duty to indemnify ERCOT with respect to the Underlying Matters including the Underlying Lawsuits;

C.    For such other and further relief as the Court deems just and equitable under the circumstances.

Respectfully submitted,

*/s/ S. Jan Hueber*

**S. Jan Hueber**
State Bar No. 20331150
Hueber@litchfieldcavo.com
**Mahan V. Wright**
State Bar No. 24096880
wrightM@litchfieldcavo.com
**E.R. Hamilton**
State Bar No. 24068685
HamiltonE@litchfieldcavo.com
**LITCHFIELD CAVO LLP**
100 Throckmorton St., Ste. 500
Fort Worth, Texas 76102
Telephone: (817) 945-8025
Facsimile: (817) 753-3232

**ATTORNEYS FOR PLAINTIFF**
**THE CINCINNATI INSURANCE COMPANY**

## CERTIFICATE OF SERVICE

I certify that, on July 20, 2022, a copy of the foregoing document was filed through the Court's CM/ECF system which will provide electronic notice to Rebecca DiMasi, Shidlofsky Law Firm, PLLC, 7200 North Mopac Expressway, Suite 430, Austin, Texas 78731, in accordance with the Federal Rules of Civil Procedure.

*/s/ S. Jan Hueber*
S. Jan Hueber